COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz,
Causey, Friedman, Chaney, Raphael, Lorish, Callins, White and Frucci
Argued at Richmond, Virginia

DAWN LEWIS WILLIAMS

v.     Record No. 1201-22-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RICHARD Y. ATLEE, JR.
MARCH 18, 2025

UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Richard E. Moore, Judge

Seth R. Carroll (Commonwealth Law Group, PLLC, on briefs), for
appellant.

Brendan T. Chestnut, Deputy Solicitor General (Jason S. Miyares,
Attorney General; Erika L. Maley, Solicitor General; Graham K.
Bryant, Deputy Solicitor General; Michael Dingman, Assistant
Solicitor General; Laura H. Cahill, Assistant Attorney General, on
brief), for appellee.


Appellant Dawn Lewis Williams was injured while in the custody of the Virginia

Department of Corrections ("VDOC"). She filed an initial complaint while she was still

incarcerated, seeking recovery under the Virginia Tort Claims Act ("VTCA"). After she was

released from incarceration, she nonsuited her original action and filed a new complaint, also

seeking recovery under the VTCA. The VTCA provides a limited waiver of the

Commonwealth's sovereign immunity for a "claim by an inmate of a state correctional facility"

where the "claimant verifies under oath, by affidavit, that he has exhausted his remedies" under

VDOC's inmate grievance procedures. Code § 8.01-195.3(7). The circuit court sustained the

Commonwealth's plea in bar, finding that the Commonwealth had not waived its sovereign

immunity because Williams asserted a "claim by an inmate," and she had not attached an affidavit stating that she had exhausted her administrative remedies. A divided three-judge panel reversed the circuit court's decision, finding that the time to assess whether a claimant is an inmate is when the complaint is filed, and Williams was no longer an inmate when she filed her second complaint. *Williams v. Commonwealth*, 80 Va. App. 637, *mandate stayed upon grant of reh'g en banc*, 81 Va. App. 27 (2024). Upon the Commonwealth's petition for a rehearing en banc, we affirm the circuit court's judgment.

## I. BACKGROUND

On review, we accept the facts as alleged in the pleadings as true. *Commonwealth v. Muwahhid*, 77 Va. App. 821, 824 (2023). So viewed, the facts are as follows.

On October 11, 2018, while incarcerated at the Fluvanna Correctional Center, Williams was scheduled to attend a medical appointment at UVA Health University Hospital. She required handicap-equipped transportation to take her to and from the appointment, but the VDOC officers told her that the handicap-equipped van was not available. The officers attempted to lift Williams into a standard transport van while she was still shackled. Due to difficulties safely loading Williams, however, the officers obtained authorization to unshackle her "so that she could assist in pulling herself safely into the van." Once she was in the van, the officers shackled her again.

When they arrived at the hospital, an officer attempted to call for authorization to unshackle Williams while they unloaded her. Because they were running behind for Williams's appointment, however, another officer did not wait. This officer tried to pull Williams backwards out of the van without help and while Williams was still shackled. The officer lost her balance, fell, and pulled Williams down with her. As a result, Williams sustained injuries, which she alleged "required significant follow up medical attention."

In August 2019, Williams filed, *pro se*, a handwritten notice of claim with the Office of the Attorney General indicating that she intended to sue VDOC for causing her injuries.[1] Subsequently, Williams retained counsel, who filed a supplemental notice on October 8, 2019.[2]

Williams filed her initial complaint on May 4, 2020, in Fluvanna County, while she was still incarcerated. She did not file an affidavit stating that she had exhausted her administrative remedies under VDOC's inmate grievance procedures. The Commonwealth filed a plea in bar asserting sovereign immunity. While the plea in bar was pending, Williams was released from incarceration.

After her release, and before the Fluvanna circuit court could rule on the pending plea in bar, Williams nonsuited her original action. She filed a new complaint in the Circuit Court for the City of Charlottesville. This complaint, like the original, did not include an affidavit verifying that Williams had exhausted her administrative remedies.

The Commonwealth filed another plea in bar, raising two issues. First, it asserted sovereign immunity, arguing that the VTCA did not waive the Commonwealth's sovereign immunity because Williams asserted a "claim by an inmate" under Code § 8.01-195.3(7) and she had not attached an affidavit stating she had exhausted her administrative remedies. It argued that her "release from incarceration almost three years after the date of the incident does not obviate her obligation to exhaust her administrative remedies." Second, the Commonwealth argued that Williams's notices of claim did not meet the statutory requirements of Code § 8.01-195.6(A) because they were insufficient as to the time and place of the incident. The

---

[1] This notice listed the date of the injury, but it did not give the time of the incident. It also indicated that the injury occurred "during transportation to UVA hospital" and "when arriving at the hospital."

[2] This supplemental notice again listed the date of injury without stating the time of the incident. It also said that the injury occurred at the Fluvanna Correctional Center.

circuit court agreed with the Commonwealth, and it sustained the Commonwealth's plea in bar on both issues. It dismissed Williams's complaint with prejudice.

Williams appealed to this Court, arguing that the circuit court erred in finding that she was an inmate subject to the exhaustion requirement under Code § 8.01-195.3(7) because she was no longer an inmate at the time she filed her complaint in the Charlottesville circuit court. She also argued that her notices of claim, both individually and collectively, were sufficient to satisfy the requirement of Code § 8.01-195.6(A), and, in any event, they were sufficient to give the Commonwealth actual knowledge of her claim.

With one judge dissenting, a panel of this Court held that a "'claim by an inmate' under the VTCA is a complaint, or the initiation of a lawsuit, asserted by someone who is currently under the custody and control of a state correctional facility." *Williams*, 80 Va. App. at 662. Thus, the panel majority found that whether a claimant must file the affidavit stating that he or she had exhausted the administrative remedies depends upon the claimant's status at the time the complaint is filed. *Id.* at 655. Because Williams was no longer an inmate at the time she filed her complaint, the panel majority found that Williams was not required to file the affidavit. *Id.* at 662. The panel also concluded that Williams's notices of claim were sufficient because precedent requires only "reasonable compliance" with the VTCA's notice provisions and Williams's notices were sufficient to "pass muster" under Code § 8.01-195.6. *Id.* at 668.

The dissenting judge concluded that the language of the VTCA indicated that a "claim" had to exist prior to the complaint being filed. *Id.* at 672-73 (AtLee, J., dissenting). Thus, the dissenting judge concluded that the "claim" is made at least by the time the claimant submits the notice of claim. *Id.* at 670. Additionally, the dissenting judge would not have reached the issue of whether the notices were legally sufficient because Williams did not fulfill the exhaustion

- 4 -

requirement. *Id.* at 670 n.14. Therefore, the dissenting judge would have affirmed the circuit court.

We granted the Commonwealth's petition for en banc review, which alleged the panel majority had "adopt[ed] an incorrect definition of 'claim' to hold that the Commonwealth was not entitled to sovereign immunity" and that it erred in finding the notices of claims were legally sufficient. *Williams v. Commonwealth*, No. 1201-22-2 (Pet. For Reh'g en banc, May 14, 2024).

## II. ANALYSIS

### A. *Standard of Review*

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Kinsey v. Va. Elec. & Power Co.*, 300 Va. 124, 130 (2021) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)). "The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002)). To the extent our review requires us to interpret the provisions of the VTCA, that is "a pure question of law[,] which we review de novo." *VACORP v. Young*, 298 Va. 490, 494 (2020) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).

### B. *The Commonwealth did not waive sovereign immunity under the VTCA because Williams did not comply with Code § 8.01-195.3(7)'s requirement to exhaust her administrative remedies.*

The Supreme Court has repeatedly stated that "[t]he doctrine of sovereign immunity is 'alive and well' in Virginia." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 313 (2022) (quoting *Messina v. Burden*, 228 Va. 301, 307 (1984)). Unless there is an express

statutory or constitutional provision waiving sovereign immunity, "the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *Muwahhid*, 77 Va. App. at 829 (quoting *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001)).

"[T]hrough the enactment of the VTCA, the General Assembly has provided an 'express but limited waiver of the Commonwealth's immunity from tort claims.'" *Phelan v. Commonwealth*, 291 Va. 192, 195 (2016) (quoting *Melanson*, 261 Va. at 181). The VTCA waives the Commonwealth's "sovereign immunity for tort claims in the circumstances to which the statute applies, but the waiver is a limited one and the VTCA, being an enactment in derogation of the common law, is strictly construed." *Canter v. Commonwealth*, 82 Va. App. 593, 602 (2024) (quoting *Doud v. Commonwealth*, 282 Va. 317, 321 (2011)). Thus, any "waiver 'will not be implied from general statutory language but must be explicitly and expressly stated in the statute.'" *Muwahhid*, 77 Va. App. at 829 (quoting *All. to Save the Mattaponi v. Commonwealth Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 455 (2005)). In interpreting the VTCA, we cannot "'place any limitation on the clear and comprehensive language of the statute, or . . . create an exception where none exists under the guise of statutory construction,' as to do so 'would be to defeat the purpose of the enactment and to engage in judicial legislation.'" *Canter*, 82 Va. App. at 602 (alteration in original) (quoting *Phelan*, 291 Va. at 195).

The VTCA waives the Commonwealth's immunity for claims of money "on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. But it excludes recovery for "claim[s] by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted

his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections." Code § 8.01-195.3(7). Thus, "[a]s applied to state prisoners, the [VTCA] partially waives sovereign immunity" for those inmates that comply with the exhaustion requirements, but it does not waive sovereign immunity for claims by inmates that do not comply with this requirement.[3] *AlBritton v. Commonwealth*, 299 Va. 392, 399 (2021); *see also Canter*, 82 Va. App. at 602 ("The VTCA also enumerates several exceptions to the waiver of sovereign immunity and where an exception applies, the Commonwealth retains its sovereign immunity from tort claims.").

The question before the en banc Court is whether Code § 8.01-195.3(7) required Williams to file an affidavit stating that she had exhausted her administrative remedies.[4] Williams argues that she was no longer an inmate at the time she filed her complaint in the Charlottesville circuit court, and, therefore, she was not subject to the VTCA's exhaustion requirement for "claims by an inmate." The Commonwealth, however, argues that "claim" refers to the "set of facts giving rise to a potential right to relief," which makes the relevant time to evaluate the claimant's status the time of injury. Because Williams was an inmate when she

---

[3] During oral argument there was some concern about how the Court's interpretation would affect those individuals who were released from incarceration before they had an opportunity to fully exhaust the administrative remedies. But this concern is misplaced. As our Supreme Court has noted, only "reasonable compliance with the requirements of the [VTCA], not perfect compliance," is required. *Billups v. Carter*, 268 Va. 701, 710 (2004). Exhaustion is required so long as the claimant had the temporal opportunity to exhaust his or her administrative remedies. *See AlBritton v. Commonwealth*, 299 Va. 392, 402 (2021) (finding that a claimant who "did all that he could have done to exhaust his administrative remedies" has reasonably complied with the requirements of Code § 8.01-195.3(7)); *Billups*, 268 Va. at 709 (finding that exhaustion turned on whether the plaintiff "had in fact exhausted such administrative remedies as were available"). If the claimant begins the process and is released before it is completed, the claimant has exhausted all the available remedies.

[4] Because we conclude that Code § 8.01-195.3(7) required Williams to submit an affidavit verifying she had exhausted her administrative remedies to fit within the limited waiver of the Commonwealth's sovereign immunity, we do not reach whether her written notices complied with the requirements of Code § 8.01-195.6(A).

was injured, the Commonwealth contends that she was required to exhaust her administrative remedies and file an affidavit certifying that she did so to fit within the statutory waiver of the Commonwealth's sovereign immunity. Thus, we are tasked with interpreting "claim by an inmate" and determining at what point we evaluate the claimant's status in assessing the Commonwealth's sovereign immunity defense.

To answer this question, we look to the text and context of the VTCA. "When construing a statute, our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'" *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). We interpret the words in the context of the entire statute because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *Id.* (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)). "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Chenevert v. Commonwealth*, 72 Va. App. 47, 56 (2020) (alteration in original) (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010)). "In applying these principles, we also consider 'the evil sought to be corrected by the legislature' when it adopted the pertinent language." *Geico Advantage Ins. Co. v. Miles*, 301 Va. 448, 455 (2022) (quoting *Southern Ry. Co. v. Commonwealth*, 205 Va. 114, 117 (1964)).

1. The plain language of the statute supports finding that the operative time to evaluate the claimant's status is at the time of injury.

"[S]tatutory interpretation must begin with the text itself to determine the intent of the legislature." *Davenport v. Utility Trailer Mfg. Co.*, 74 Va. App. 181, 196 (2022). "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Matzuk v. Price*, 70 Va. App. 474, 483 (2019) (quoting *Jones v. Commonwealth ex rel. Moll*, 295 Va. 497, 504

(2018)); *see also Dietz v. Commonwealth*, 294 Va. 123, 133 (2017) (applying the "ordinary and plain meaning" of words not defined in a statute (quoting *Hilton v. Commonwealth*, 293 Va. 293, 299 (2017))). To find the ordinary and plain meaning of a word, "courts can look to dictionary definitions," *Davenport*, 74 Va. App. at 196, or "pertinent analysis in prior case[s]," *Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019). In finding the plain meaning of a word, we will not "isolate particular words or phrases"; instead, we examine "a statute in its entirety." *Ducharme v. Commonwealth*, 70 Va. App. 668, 677 (2019) (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006)).

"Claim" can mean different things depending on the context in which it is used. For example, claim can be defined as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, *Black's Law Dictionary* (12th ed. 2024). But it has also been defined as the set of "operative facts giving rise to a right." *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 527 (4th Cir. 2014) (quoting *Claim*, *Black's Law Dictionary* (9th ed. 2009)). At the time the General Assembly enacted the exhaustion provision of the VTCA, Black's Law Dictionary included both definitions, defining claim as "[c]ause of action," a "[r]ight to payment, whether or not such right is reduced to judgment," or a "demand for money or property." *Claim*, *Black's Law Dictionary* (5th ed. 1979). It defined "cause of action" as a "state of facts which would entitle [a] party to sustain action and give him [the] right to seek a judicial remedy." *Cause of Action*, *Black's Law Dictionary* (5th ed. 1979). We find that the Commonwealth's definition, which equates a claim with the accrual of a cause of action, is more consistent with the text and context of the VTCA.

This interpretation is consistent with how the VTCA uses "claim" in other provisions. Code § 8.01-195.3 provides that "the Commonwealth shall be liable for claims for money only

accruing on or after" a particular date. A complaint does not "accrue," but a cause of action

does. *Lucas v. Woody*, 287 Va. 354, 359, 362 (2014). Thus, this provision shows that the VTCA

used claim synonymously with cause of action or the set of facts allegedly giving rise to the right

to recover. Furthermore, the General Assembly used claim this way in Code § 8.01-195.3, which

is the same code section that contains "claims by an inmate," which we are tasked with

interpreting.[5]

Likewise, Code § 8.01-195.6 uses claim to refer to the underlying facts giving rise to a

cause of action. It requires a claimant to "file[] a written statement of the nature of the claim,

which includes the time and place the injury is alleged to have occurred . . . , within one year

after such cause of action accrued." Code § 8.01-195.6(A). By using "such cause of action" to

refer back to the "claim," the General Assembly indicated an intent to use the two terms as

synonymous. *See Joyce v. Commonwealth*, 82 Va. App. 519, 527 (2024) (noting that "'such'

means '[t]hat or those; having just been mentioned'" and "must refer to something that has

already been mentioned" (alteration in original) (quoting *Such*, *Black's Law Dictionary* (11th ed.

2019))). Moreover, the notice must include a "written statement of the nature of the claim,

which includes the time and place at which the injury is alleged to have occurred." Code

§ 8.01-195.6(A). In asking for a description of the "nature of the claim," this provision

specifically asks for a description of the operative facts giving rise to the right. "[I]t is a

common canon of statutory construction that when the legislature uses the same term in separate

statutes, that term has the same meaning in each unless the General Assembly indicates to the

---

[5] The dissent asserts that we have "look[ed] to every portion of the VTCA but the one before us." While we are required to look at the phrase we are interpreting, we must also be "careful to ensure that statutes 'not . . . be construed by singling out a particular phrase.'" *Cox v. Commonwealth*, 73 Va. App. 339, 345 (2021) (alteration in original) (quoting *Eberhardt*, 283 Va. at 195). We have considered "claim by an inmate" in the context of the entire VTCA. Moreover, Code § 8.01-195.3, which refers to a "claim" as "accruing," is the same statutory provision that contains subsection (7), which is the "claim by an inmate" provision before us.

contrary." *Gerald v. Commonwealth*, 68 Va. App. 167, 174 (2017) (quoting *Barson v. Commonwealth*, 284 Va. 67, 74 (2012)).  Thus, "claim" is best defined as the "operative facts giving rise to a right" because the General Assembly used it in that manner in other provisions.

      2. Other provisions of the VTCA support finding that the operative time to evaluate the claimant's status is when the cause of action accrues.

Beyond the plain meaning of the word "claim," the context of the VTCA, and the general process for pursuing a claim under the VTCA, support our interpretation of Code § 8.01-195.3(7).  *See Geico Advantage*, 301 Va. at 455 ("[W]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." (alteration in original) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993))).  The general process for pursuing a claim against the Commonwealth, and the way "claim" is used elsewhere in the VTCA, indicates that a claim exists well before a complaint is filed.

Code § 8.01-195.6, aptly titled "Notice of Claim," requires a claimant to file a notice of claim.  A notice of claim is "a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable . . . ."  Code § 8.01-195.6(A).  The purpose of the notice requirement is to "provide notice to the Commonwealth of a facially cognizable claim so that the Commonwealth is in a position to *investigate and evaluate that claim*."  *Bates v. Commonwealth*, 267 Va. 387, 394 (2004) (emphasis added).  Once it has investigated the claim, the Commonwealth can then determine whether it wants to attempt to settle the claim before litigation or deny the claim.  Code § 8.01-195.5.  This is often called the claim stage of litigation.  For the Commonwealth to investigate and make a decision about the claim, logically, a claim must already exist.

Even the statutory language setting out the authority of the Attorney General and the Director of the Division of Risk Management to settle a claim supports this interpretation.  While the Attorney General has the authority to settle a claim at any point, the Director of the Division

of Risk Management may only "adjust, compromise and settle claims against the Commonwealth cognizable under this article *prior* to the commencement of suit unless otherwise directed by the Attorney General." Code § 8.01-195.5 (emphasis added). That the Director of the Division of Risk Management can only settle a claim prior to the "commencement of suit," i.e., the filing of a complaint, necessarily means that a claim exists before that point.

Further, Code § 8.01-195.7 establishes that a claimant may only proceed with a lawsuit (1) "upon denial of the claim by the Attorney General or the Director of the Division of Risk Management" or (2) "after the expiration of six months from the date of filing the notice of claim unless, within that period, the claim has been compromised and discharged pursuant to § 8.01-195.5." This language again indicates that the "claim" exists before the complaint is filed. Finding that a "claim by an inmate" is not made until the complaint is filed directly contradicts the way claim is used in these provisions. *See Eberhardt*, 283 Va. at 195 ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning.").

Finally, in other provisions of the VTCA, the General Assembly has demonstrated that it can, if it chooses, specifically place the temporal focus on proceedings in court. For example, in Code § 8.01-195.7, the VTCA provides that an "action," which is initiated by filing a complaint, "may be commenced . . . upon denial of the claim by the Attorney General or the Director of the Division of Risk Management." *See also* Code § 8.01-195.5 (The Director of the Division of Risk Management has authority to "settle claims against the Commonwealth . . . prior to the commencement of suit."). In these provisions, the General Assembly used the terms "action" and "suit," which specifically place the focus on court proceedings. It did not use similar language when drafting the exclusion in Code § 8.01-195.3(7). We assume that the "General Assembly chose, with care, the words it used in enacting the statute." *PKO Ventures, LLC v.*

- 12 -

*Norfolk Redevelopment & Hous. Auth.*, 286 Va. 174, 183 (2013) (quoting *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 19 n.2 (2013)). The switch between "claim" and "suit" or "action" demonstrates that the General Assembly intended them to mean different things.[6] Thus, the context of the VTCA, and the general process for pursuing a claim under the VTCA, indicates that the claim must exist before the complaint is filed.

To interpret "claim" as referring to the filing of the complaint, as Williams asks us to, would require either giving "claim" different meanings in different provisions of the VTCA (and in Code § 8.01-195.3 itself) or reading certain provisions out of the VTCA entirely.[7] Both of which are inconsistent with our canons of statutory interpretation. *See Eberhardt*, 283 Va. at 195 ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning."); *Spratley v. Commonwealth*, 298 Va. 187, 195 (2019) ("discourag[ing] any interpretation of a

---

[6] Our colleagues in the dissent point out that Code § 8.01-195.6 and Code § 8.01-195.7 also separately refer to both "claim" and the accrual of a cause of action. *See* Code § 8.01-195.6(A) ("Every claim cognizable against the Commonwealth . . . shall be forever barred unless the claimant . . . has filed a written statement of the nature of the claim . . . within one year after such cause of action accrued."); Code § 8.01-195.7 ("All claims against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the notice of claim, or within two years after the cause of action accrues."). But Code § 8.01-195.6(A) specifically equates "claim" with the cause of action accruing by using the language "such cause of action." *See* Joyce, 82 Va. App. at 527 (noting that "'such' means '[t]hat or those; having just been mentioned'" and "must refer to something that has already been mentioned" (alteration in original) (quoting *Such*, *Black's Law Dictionary* (11th ed. 2019))). Code § 8.01-195.7, on the other hand, specifically marries "claim" to the time for filing in court by using "such action." This further supports our position, in demonstrating that the General Assembly can, when it chooses, place the focus on proceedings in court.

[7] The dissent points to the Federal Prison Litigation Act, and notes that federal courts are uniform in interpreting the statute such that it does not require former inmates who file a complaint to comply with the exhaustion requirement. We find this argument unavailing. The federal statute uses different language than the VTCA. It provides that "[n]o action shall be brought . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, it specifically ties the exhaustion requirement to an "action" rather than a "claim."

statute that would render any part of it useless, redundant or absurd" and instead "seek[ing] to read statutory language so as to give effect to every word" (quoting *Owens v. DRS Auto. FantomWorks, Inc.*, 288 Va. 489, 497 (2014))).

A claim cannot be described, investigated, and settled or denied unless that claim already exists. The VTCA provides that all of this happens prior to a complaint ever being filed. Though the VTCA is not a model of clarity, these provisions do clearly demonstrate that a claim must exist well before a complaint is ever filed. Interpreting "claim" to refer to the "operative facts giving rise to a right," or synonymous with cause of action, is consistent with how "claim" is used in other provisions of the VTCA and is the proper way to interpret the statute to give effect to all provisions of the VTCA.

Any issues or inconsistencies in the VTCA would need to be fixed by the General Assembly. Until then, we are left with the requirement that we strictly construe the VTCA and any waiver of sovereign immunity. *Doud*, 282 Va. at 320 ("In the VTCA, the Commonwealth has waived its sovereign immunity for tort claims in the circumstances to which the statute applies, but the waiver is a limited one and the VTCA, being an enactment in derogation of the common law, is strictly construed."). We cannot "create an exception where none exists under the guise of statutory construction,' as to do so 'would be to defeat the purpose of the enactment and to engage in judicial legislation.'" *Canter*, 82 Va. App. at 602 (quoting *Phelan*, 291 Va. at 195).

There is nothing in the plain language of Code § 8.01-195.3(7), or the other provisions of the VTCA, that indicates an explicitly and expressly stated intent to waive sovereign immunity for inmate claims where the inmate has not exhausted his or her administrative remedies.[8] *See*

---

[8] Code § 8.01-195.3(7) is not a model of clarity. But even if we assume that it is ambiguous and does not clearly indicate whether it applies to inmates who have been released from prison by the time they file their complaints, the statute should nevertheless be construed to

*Muwahhid*, 77 Va. App. at 829 (A "waiver will not be implied from general statutory language but must be explicitly and expressly stated in the statute." (quoting *All. to Save the Mattaponi*, 270 Va. at 455). The plain language of Code § 8.01-195.3(7), and the context of the VTCA process, make clear that the General Assembly intended to waive the Commonwealth's sovereign immunity for inmate claims only where the inmate has exhausted his or her administrative remedies.

    3. Interpreting "claim" to refer to the time the complaint is filed would undermine the purpose of the exhaustion requirement.

"The exhaustion requirement 'protects "administrative agency authority"' and 'promotes efficiency' by encouraging disputes to be resolved 'quickly and economically' during the prelitigation administrative process." *AlBritton*, 299 Va. at 399-400 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).[9] It is not intended to be a "gratuitous roadblock to prisoner litigation."

---

require exhaustion unless it is not possible. As the Supreme Court of the United States has noted, "because the power to waive the federal government's immunity is [the legislature's] prerogative, not [the Court's], th[e] Court applies a 'clear statement' rule." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (quoting *FAA v. Cooper*, 566 U.S. 284, 291 (2012)). Under the federal clear-statement rule, the Court "will permit a suit against the government only when a statute 'unmistakabl[y]' allows it." *Id.* (alteration in original) *(*quoting *FAA*, 566 U.S. at 291); *accord* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 281 (2012) ("Presumption Against Waiver of Sovereign Immunity"). Similar to the clear-statement rule, our Supreme Court has held that a "waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Montalla, LLC. v. Commonwealth*, 303 Va. 150, 165 (2024) (quoting *All. to Save the Mattaponi*, 270 Va. at 455); *see also Azfall v. Commonwealth*, 273 Va. 226, 230 (2007) (same); *Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244-45 (2004) (same). Nothing in Code § 8.01-195.3(7) is sufficiently clear to constitute a clear waiver of the Commonwealth's immunity for inmates that are no longer incarcerated and that did not exhaust their administrative remedies when they had the opportunity to do so. Thus, we would still find that the Commonwealth did not waive its sovereign immunity.

[9] The dissent correctly notes that we cannot rely on public policy arguments that contravene clear statutory language and that "we are not 'free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal.'" *Vasquez v. Dotson*, 303 Va. 97, 104 (2024) (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022)). Rather than contravene statutory language, however, the public policy rationale simply supports our interpretation of the language of the statute. Further, in interpreting the statute as it does, the

- 15 -

*Id.* at 399. Instead, "exhaustion statutes in the prison-litigation context are intended to 'reduce the quantity and improve the quality of prisoner suits.'" *Id.* (quoting *Woodford*, 548 U.S. at 93-94). Thus, an interpretation of this provision which allows inmates to simply wait until they are released from incarceration to avoid the exhaustion requirement is inconsistent with the intent of the exhaustion provision. *See Geico Advantage*, 301 Va. at 455 ("In applying these principles, we also consider 'the evil sought to be corrected by the legislature' when it adopted the pertinent language." (quoting *Southern Ry. Co.*, 205 Va. at 117).

In *Lucas v. Woody*, 287 Va. 354 (2014), the Supreme Court considered the applicability of the statute of limitations period in Code § 8.01-243.2, which provides, "[n]o person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted." The plaintiff argued that the statute of limitations did not apply because she was no longer "confined" at the time she filed her complaint. *Lucas*, 287 Va. at 360. The Supreme Court noted that having "the applicability of a statute of limitations change based upon the confinement status of the plaintiff at the time a lawsuit is filed, rather than the particular cause of action asserted and the plaintiff's status at the time the action accrued would be anomalous."[10]

---

dissent ignores the rules we are required to follow when interpreting waivers of the Commonwealth's sovereign immunity and the VTCA. *See Canter*, 82 Va. App. at 602 (noting that the VTCA is "in derogation of the common law, [and] is strictly construed"); *Muwahhid*, 77 Va. App. at 829 (noting that a waiver "will not be implied from general statutory language but must be explicitly and expressly stated in the statute" (quoting *All. to Save the Mattaponi*, 270 Va. at 455)).

[10] The Supreme Court also noted that Code § 8.01-243.2 "requires a person who is confined to exhaust all administrative remedies before filing a personal action relating to conditions of confinement." *Lucas*, 287 Va. at 361. It reasoned that it "makes sense in that an individual would necessarily need to be confined in order to take advantage of administrative remedies offered by a state or local correctional facility." *Id.* While we agree that a person must be incarcerated in order to exhaust administrative remedies, we do not find this reasoning inconsistent with our interpretation. As noted above, exhaustion is required so long as the claimant had the temporal opportunity to exhaust his or her administrative remedies. *See*

*Id.* at 362. Such an interpretation would result in "two different and shifting statutes of limitations for the same cause of action." *Id.* Further, it would cause uncertainty because an action could be revived by a change in the plaintiff's confinement status. *Id.* Thus, the Court found that the statute of limitations applied to all actions relating to the conditions of incarceration, regardless of whether the plaintiff was still incarcerated when the action was filed. *Id.* at 363.

Though *Lucas* concerned a different statute, the same reasoning applies here. Interpreting the statute as Williams asks us to would result in two different requirements depending on the confinement status of the inmate at the time a complaint is filed. Those who are still incarcerated would be subject to an exhaustion requirement. Those who are no longer incarcerated would not be subject to an exhaustion requirement—even if they had time and opportunity to exhaust those remedies. Further, as in *Lucas*, a claim could be revived, as it was here, by a change in the plaintiff's confinement status. There is no obvious rationale why such an interpretation would further the legislative intent of an exhaustion requirement. Indeed, such an interpretation is, as mentioned above, in direct conflict with the purpose of an exhaustion requirement.

### III. CONCLUSION

We find that the plain language of Code § 8.01-195.3(7) requires us to evaluate the claimant's status at the time of injury. Because Williams was still incarcerated at the time of injury, and she had the opportunity to exhaust her administrative remedies, she was required to

---

*AlBritton*, 299 Va. at 402 (finding that a claimant who "did all that he could have done to exhaust his administrative remedies" has reasonably complied with the requirements of Code § 8.01-195.3(7)). If the plaintiff was released from incarceration before he or she had the ability to fully exhaust his or her remedies, then he or she would not be barred from filing suit.

do so.  Since she did not do so, she does not fall within the limited waiver of sovereign

immunity.  Accordingly, the decision of the circuit court is affirmed.

*Affirmed.*

Athey, J., concurring in the judgment.

I concur with the majority's decision to affirm the circuit court below. However, in reviewing the record, I am compelled to conclude that Williams's claim fails on a different and more narrow ground, namely that her statutorily required VTCA notice of claim, initially filed *pro se* and secondly and subsequently filed by her counsel, named separate and different locations for her injuries. Since the first notice of claim designated the location of her injury as occurring while being transported to the UVA Hospital in Charlottesville and the second and subsequent notice of claim designated the Fluvanna Correctional Center as the location of her injury, she failed to comply with the VCTA notice requirement thus barring her claim. Regardless of whether Williams filed a "claim by an inmate" at the time her subsequent nonsuit was refiled in the Charlottesville circuit court, her conflicting notices failed to comply with the notice requirements of the VTCA. Thus by deciding the case on this best and narrower ground, both the majority and the dissent could have avoided much of their opinions asserting whether and to what extent the statutory phrase "claim by an inmate" applied to the factual scenario here. So consistent with principles of judicial restraint, I would have affirmed the trial court on this best and narrower ground alone.

Under the VTCA, a plaintiff must comply with the notice requirement, which states that:

> Every claim cognizable against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim, which includes the *time and place at which the injury is alleged to have occurred* and the agency or agencies alleged to be liable, within one year after such cause of action accrued.

Code § 8.01-195.6(A) (emphasis added). "The purpose of the [VTCA] statute is to enable [the Commonwealth] to make prompt investigation of tort claims, to correct dangerous or defective conditions, and, where justified, to avoid the expense and delay of litigation by making voluntary

settlements with claimants." *Town of Crewe v. Marler*, 228 Va. 109, 112 (1984) (quoting *Heller v. City of Va. Beach*, 213 Va. 683, 685 (1973)). "[T]he VTCA, being an enactment in derogation of the common law, is strictly construed." *Canter v. Commonwealth*, 82 Va. App. 593, 602 (2024). And for that reason, "strict compliance with all of its provisions is required." *Phelan v. Commonwealth*, 291 Va. 192, 197 (2016) (quoting *Halberstam v. Commonwealth*, 251 Va. 248, 251 (1996)); *Halberstam*, 251 Va. at 252 (noting that compliance with even "the arbitrary and peremptory provisions of the statute are necessary to accomplish the purposes of the enactment"). In addition, although we liberally construe the notice requirement "and a substantial compliance with it is sufficient," *Bowles v. City of Richmond*, 147 Va. 720, 727 (1925), *aff'd on rehearing*, 147 Va. 729 (1926), we may not through construction superimpose compliance where the language of the notice as written is deficient in the fact record, "even where . . . information [showing compliance outside of the notice] is easily inferred from the notice of claim," *Phelan*, 291 Va. at 197 (holding that the claimant's failure to "explicitly include the identity of the agency or agencies alleged to be liable" caused her notice to be deficient under the VTCA even though the agency in question could be inferred from her allegations).

To comply with the VTCA, the notice must "reasonably identify the location where the injury occurred with sufficient specificity such 'that the Commonwealth is in the position to investigate and evaluate [the] claim.'" *Id.* at 196 (quoting *Bates v. Commonwealth*, 267 Va. 387, 394 (2004)). "The concept of reasonableness does not lend itself to a bright-line test or dictate separate and distinct tests based on the nature of the asserted claim. Rather, its proper analysis and application is directed to the specific allegations of a notice of claim in a particular case." *Bates*, 267 Va. at 394.

Here, Williams sent the Attorney General two separate and distinct notices. The first, sent *pro se*, stated that Williams was injured on "Oct. 10, 2018" and the injuries occurred "during

transportation to UVA Hosp. by Corrections Officers at Fluvanna Corr. Center." The second, sent by counsel, stated that the injury occurred "on or about October 10, 2018" at "Fluvanna Correctional Center."[11] When "directed to the specific allegations of a notice of claim in [this] particular case," the need for consistency regarding location is not mere formulaic adherence to the statute, but is critical to allow the Commonwealth to "investigate and evaluate" the claim alleged. *Bates*, 267 Va. at 394; *see Halberstam*, 251 Va. at 251 (dismissing plaintiff's claims when the injury was alleged to have occurred in "the school parking lot" but where the parties stipulated that the school had multiple parking lots and more than one campus). This is of particular significance since the record on appeal includes Williams's medical records from October *11*, 2018, at Fluvanna Correctional Center, which notes that Williams fell and had "superficial abrasions" when she "return[ed] from transportation." When viewing both notices together, the Commonwealth could not reasonably be expected to know which location or date Williams's claim referred to, depriving it of awareness of "the essential facts of [her] claim."[12] *Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 245 (2004).

The conflict with the notices is compounded when compared against the procedural history of this case. This matter was initially filed in Fluvanna circuit court, nonsuited, and then inexplicably refiled in the Charlottesville circuit court without seeking leave from the Fluvanna circuit court to transfer the previously nonsuited matter to a different jurisdiction. It is

---

[11] I consider both notices together, as each was properly sent to the Attorney General. *See Halberstam*, 251 Va. at 252 (only considering letters which were "sent to an official designated in the statute and in the manner prescribed by the statute . . . ").

[12] When faced with the issue of differing notices, at least one of our sister state courts has reached this exact conclusion: that the change in location in the notice, even by misidentification, renders the notice defective. *Glaspie v. City of Detroit*, No. 298877, 2011 Mich. App. LEXIS 2278, at *6 (Dec. 20, 2011) ("Plaintiff misidentified the defect's location in her initial notice and therefore clearly did not provide a 'specific description of the location.' This rendered the notice defective." (quoting *Plunkett v. Dep't of Transp.*, 779 N.W.2d 263, 270 (Mich. Ct. App. 2009))).

reasonable to infer from the record that once Williams retained legal counsel who further investigated the matter, her counsel determined that the proper jurisdiction and venue for the matter was most probably the Charlottesville circuit court. This occurred despite Williams asserting in the second and "further notice" to the Attorney General that Williams's injuries occurred at Fluvanna Correctional Center. [13] The notice provisions serve the purpose of allowing the Commonwealth to "reasonably identify where the injury occurred," *Phelan*, 291 Va. at 196, and to allow the Commonwealth to "correct dangerous or defective conditions," *Marler*, 228 Va. at 112. Williams's separate notices reasonably prevented the Commonwealth from determining where and when the injury occurred. Accordingly, I would have affirmed the circuit court's decision on this better and narrower ground.[14]

---

[13] It appears that Williams attempted to reconcile this conflict after the fact, noting in her brief to this Court upon rehearing en banc that she "erroneously omitted the word 'incarcerated' before 'Fluvanna Correctional Center'" in her second notice.

[14] As the locations of the notices are in conflict with each other as to render them noncompliant with the VTCA, I would not reach the question of whether the notices had to have alleged a specific "time" under Code § 8.01-195.6(A). *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (we decide cases on the "best and narrowest" grounds). Also, Williams urges this Court to find that the Virginia Department of Corrections had actual notice of her claim. But this argument is also unpersuasive, as even actual notice "does not obviate [Williams]'s duty to strictly comply with the Act's notice provisions." *Melanson v. Commonwealth*, 261 Va. 178, 184 (2001) (quoting *Halberstam*, 251 Va. at 252).

Lorish, J., with whom Ortiz, Causey, and Chaney, JJ., join, dissenting.

A "book" starts with an idea, then appears as an outline, before it takes shape as a first draft, and ultimately becomes a published copy. At each stage along the way, it is the same book, but it could also be described in other ways: an idea, outline, rough draft, or final copy. If you wrote to a friend about your new "book," the context would reveal whether you were talking about something that was only in your head, or something available for purchase. In either case, whether published or in outline form, it would be natural to refer to it as your "book." A "claim" is similar. Under the Virginia Tort Claims Act, a claim also exists at different stages: when it accrues, when notice of its existence is given to the Commonwealth, and when the claim is asserted in litigation by filing a complaint. At each stage along the way, there is a "claim," and the surrounding context reveals whether the statute is talking about when that claim first accrued, or when it is asserted in litigation.

The majority opinion starts by defining "claim" in the abstract, then looking to every portion of the VTCA but the one before us, Code § 8.01-195.3(7), to articulate a general working definition for "claim." The majority's big conclusion is that, under the VTCA, a claim "must exist before the complaint is filed." Of course this is correct—one must possess a legal right to seek a legal remedy before filing the complaint. But it is beside the point when a claim *first exists*; our inquiry is which "claim[s] by an inmate" are excluded from the statute's otherwise broad waiver of sovereign immunity for "claims for money." The text of Code § 8.01-195.3 makes clear that "claim by an inmate" refers to the temporal point when an inmate makes a demand for damages by filing a complaint with an affidavit attesting to the exhaustion of remedies. Accordingly, the exhaustion requirement attaches only for those claimants who are incarcerated when a complaint is filed. For this reason, I respectfully dissent.

- 23 -

A.  The text and context of "claim by an inmate" in Code § 8.01-195.3(7) show that this section focuses on when litigation formally begins through the filing of a complaint.

There are three reasons why I conclude that the exhaustion requirement in Code § 8.01-195.3(7) is triggered based on whether a claimant is incarcerated when filing a complaint. First, this interpretation is the only one that acknowledges the plain text. It gives meaning to the phrase, "claim *by an inmate*," which refers to when a demand or request is being asserted and not when a set of "facts" that "give[] rise to a right" took place. And it makes sense of the exhaustion requirement, which is met when a claimant files an affidavit along with the complaint. Second, the word "claim" has different meanings based on its context and is used in other parts of the VTCA to mean the filing of a complaint. Third, the context of Code § 8.01-195.3 is claims asserted in litigation. After addressing these points, I turn to the flaws in the majority's reasoning and explain why its interpretation is against the plain meaning of subsection (7) and Code § 8.01-195.3.

*1. The plain text of subsection (7) focuses on the assertion of claims in litigation.*

The VTCA waives the Commonwealth's immunity for "claims for money . . . of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. The statute excludes from its waiver of "liab[ility] for claims for money," "any recovery" based on several types of claims. The relevant subsection, Code § 8.01-195.3(7), describes one exclusion: "[a]ny *claim by an inmate* of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies . . . ." (Emphasis added). That is, the Commonwealth is not liable for "recovery" based on a "claim by an inmate" where the inmate has not fulfilled certain exhaustion requirements. The Commonwealth may be liable, however, for a "claim by an inmate" where the inmate has verified under oath that she has exhausted her remedies.

- 24 -

We should start with the language "claim by an inmate" within the context of Code § 8.01-195.3(7). Everyone agrees that an inmate is someone presently incarcerated. The preposition "by" conveys movement "through" something or someone. That is, the claim must be "asserted by," "authored by," "filed by," or "brought by" an inmate. The vehicle "by" which one formally brings a claim, authors a claim, or asserts a claim, is the complaint. In plain speech, a "state of facts" or the occurrence of a particular injury, cannot be made "by" someone. Instead, the *complaint* is the demand for relief that is filed "by" the inmate along with the affidavit verifying that the inmate has exhausted her administrative remedies. This interpretation adheres to our Supreme Court's prior discussion of this portion of the VTCA: "Subparagraph (7) of [Code § 8.01-195.3] refers specifically to 'any claim' *filed by* inmates, and requires the inmate to first exhaust administrative remedies." *Ogunde v. Commonwealth*, 271 Va. 639, 644 (2006) (emphasis added).

Subsection (7) then provides that in circumstances where an inmate-claimant "verifies under oath, by affidavit" that she has exhausted her remedies under VDOC grievance procedures, monetary recovery is available. The affidavit, like a complaint, is a legal device "filed by" or "asserted by" a claimant during litigation. Indeed, the affidavit's purpose is to "verify" that the inmate-claimant has taken the actions necessary to waive immunity and initiate the lawsuit, suggesting that the affidavit must accompany the complaint. *See AlBritton v. Commonwealth*, 299 Va. 392, 398 (2021) ("[The inmate's] complaint included an affidavit stating that he had 'exhausted the administrative remedies of the adult institutional inmate grievance procedure to the extent required.'").[15] The "claimant" must file the affidavit affirming the exhaustion of remedies—and who is the "claimant" but the "inmate" asserting the claim?

---

[15] The verification could not take place at the same time the cause of action accrues, and the majority has not identified any other point in time when an inmate might verify, under oath, that administrative remedies have been exhausted.

Here, the language and context affix the temporal focus of "claim by an inmate" to the time the "claimant" files the complaint with an affidavit.

        *2. Other portions of the VTCA affirm that a claim exists in multiple stages and refer to claims asserted during the complaint stage.*

Recognizing that a claim exists in different stages, and that context is necessary to understand which stage is being discussed, does not "read [other] provisions out of the VTCA entirely," as the majority suggests. Rather, it gives effect to the words used based on the plain text and context of each part of the VTCA, and merely acknowledges that a "claim" exists in one form before the "claim" is asserted through a legal complaint at a later point. Some words are like a "chameleon" in that they "ha[ve] many dictionary definitions and must draw [their] meaning from [their] context." *Pereira v. Sessions*, 585 U.S. 198, 215 (2018) (quoting *Kucana v. Holder*, 558 U.S. 233, 245 (2010)). For example, the United States Supreme Court has recognized that the word "employees" as used in Title VII of the Civil Rights Act of 1964 "may have a plain meaning in the context of a particular section" and that this does not mean it "has the same meaning in all other sections [of the statute] and all other contexts." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 343 (1997). "[E]ach section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.* at 343-44.

For a claim to survive the Commonwealth's sovereign immunity defense, the VTCA requires a series of events to occur in a particular order: a cause of action accrues, a notice of claim is filed, and then a claim is asserted in court. For example, Code § 8.01-195.6 bars "*claims*" unless the claimant "has filed" a notice of the claim "within one year after such *cause of action accrued*," and Code § 8.01-195.7 states that "[a]ll *claims* against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the *notice of claim*, or within two years after the *cause of action accrues*." (Emphases added). The suggestion that the VTCA's use of the word "claim" only refers to when the "cause of action

- 26 -

accrues" ignores the General Assembly's choice to differentiate "claim" from the accrual of a cause of action.

These same provisions also show that the General Assembly used "claim" in some sections of the VTCA to refer to the litigation stage of a claim, and not when the claim first arose. In the VTCA's statute of limitations provisions, a "claim" is forever barred unless the claimant had given a *prior* notice of claim. Code § 8.01-195.7. The notice of claim must be timely made after the cause of action accrues. Code § 8.01-195.6. That is, claims in the future, at the litigation stage, will be barred unless, in the past, a prior notice of claim has been timely made, and notice of claim must succeed the accrual of the cause of action. Furthermore, in stating that "[a]ll *claims* against the Commonwealth . . . shall be forever barred unless *such action* is commenced" within a certain time period, Code § 8.01-195.7 directly equates "such action," or lawsuit, with the "claim." Code § 8.01-195.7 (emphases added). Accounting for the meaning and context of these sections requires us to find that "claim" is not always used as a synonym to the accrual of the cause of action, but may refer to the assertion of a demand for a remedy in the litigation stage.

These provisions are not the only places where the VTCA uses "claim" in a context that makes clear that it refers to the time a complaint is filed. For example, the "amount of the claim" determines which court has jurisdiction over a plaintiff's claim. General district courts have "exclusive original jurisdiction to hear, determine, and render judgment on any claim against the Commonwealth . . . when the amount of the claim does not exceed $4,500." Code § 8.01-195.4. When the "amount of [a] claim" increases, circuit courts obtain concurrent or exclusive jurisdiction to hear the claim. *Id*. Determining a court's jurisdiction, like determining whether the Commonwealth is immune from suit, is relevant when a person initiates litigation. Here, the "amount of the claim" and "claims against the Commonwealth" are evaluated at the time the

- 27 -

complaint is filed, because it is the claim, *asserted through the complaint*, that contains the monetary demand that triggers either the jurisdiction of the general district court or the circuit court. Here too, it is true that the claim exists before the jurisdiction question arose, but it is also true that the statute uses the word "claim" to refer to a specific demand for recovery asserted in court.

### 3. Code § 8.01-195.3 focuses on when claims are brought in litigation.

The plain text of the rest of Code § 8.01-195.3 confirms that a "claim by an inmate" must be a "demand for money" asserted at the initial stage of litigation, i.e., the filing of the complaint. As noted above, Code § 8.01-195.3 governs when the Commonwealth is "liable for claims for money" and outlines situations where "recovery" is nevertheless "excluded." A defense of sovereign immunity is relevant in court: "[A]s a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." *Hinchey v. Ogden*, 226 Va. 234, 239 (1983). In other words, in allowing the Commonwealth to be liable for "claims for money," this provision of the VTCA waives immunity in *lawsuits* seeking damages. That the Commonwealth is not immune from *suit* for this type of *recovery* also communicates that the waiver of immunity in Code § 8.01-195.3 is relevant to claims asserted in litigation. "Recovery" on a claim occurs in court. *See Recovery*, *Black's Law Dictionary* (12th ed. 2024) ("[T]he obtaining, by [formal] judgment, of some right . . . which has been taken or withheld[.]"). There is no other place where the Commonwealth would be "liable," or where "recovery" would take place. Before this point, it is true that the Commonwealth could settle a claim, but it could do so whether the requirements of the VTCA were complied with or not. Furthermore, such a settlement would not admit liability, or be a "recovery" under Code § 8.01-195.3. This statute does not address the Commonwealth's ability to settle claims before litigation, but focuses on whether claims can succeed in litigation.

Each of the exclusions listed in Code § 8.01-195.3, then, must be understood as setting out the circumstances under which the Commonwealth does not waive its sovereign immunity, with the effect of preventing certain *lawsuits* from going forward.

>    4. *The majority's interpretation does not work with the text or context of Code § 8.01-195.3(7).*

Text and context are critical, but the majority opinion ignores both. The majority reasons that because Code § 8.01-195.3 states that the Commonwealth is liable for "claims for money only accruing on or after July 1, 1982," and because "a complaint does not 'accrue,' but a cause of action does," the word "claim" whenever used in Code § 8.01-195.3 must mean a "cause of action" or "the set of facts allegedly giving rise to the right to recover." Then, without analyzing the phrase "claim by an inmate," or the accompanying affidavit requirement in subsection (7), the majority concludes that this portion of the statute affixes the exhaustion requirement on when the claim first accrues. The majority supports this conclusion by finding other portions of the VTCA that support the notion that claim means "cause of action" or "the set of facts allegedly giving rise to the right to recover."

As discussed above, the VTCA governs various stages of the evolution of a claim, and context is necessary to determine which stage of a claim a given provision refers to. I readily concede that an inmate generally possesses a "claim" for recovery before the complaint is ever filed and that in some parts of the VTCA, "claim" refers to the point at which the claim accrues. But, as I have set out above, sometimes the VTCA references the point at which a "claim" is filed in litigation. Because subsection (7) focuses on when a "claim by an inmate" is advanced in litigation, and must therefore include an affidavit demonstrating the exhaustion of administrative remedies, the language used by the legislature "clear[ly] indicates" that this exclusion focuses on when an inmate brings that claim to a court. *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 195 (2012). It is only when the complaint is filed that

a court evaluates whether the claimant is an inmate, and thus whether an affidavit is needed to waive the Commonwealth's sovereign immunity and allow the claimant "recovery" at law. *Cf. Massenburg v. City of Petersburg*, 298 Va. 212, 221 (2019) (finding that a court properly granted a city's plea in bar of sovereign immunity and dismissed the action when the uncontested facts in the complaint did not give rise to the city's liability).

Even assuming for the sake of argument that "claim" means "cause of action" every time it is used in the VTCA (ignoring that the VTCA separately refers to "cause of action" in several places, as discussed above), that would not prove that subsection (7) ties the exhaustion requirement to the point at which the cause of action accrues. If Code § 8.01-195.3(7) were rewritten to exclude from recovery "[a]ny cause of action by an inmate of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies . . . " the overall context of the statute would still focus on the litigation phase—the point at which the inmate asserts the cause of action—for all the reasons already discussed. The filing of the complaint is when a court determines whether sovereign immunity bars the claim, or cause of action, and that is when the "claimant" must file an affidavit of exhaustion with the complaint—if the claimant is an inmate at the time of filing.[16]

Really, the majority rewrites "claim by an inmate" to instead state, "claim arising out of a period of confinement" or "claim based on an occurrence during a period of confinement." This is not what the text says. Furthermore, the General Assembly knew how to cast a wider net of

---

[16] I agree with the Commonwealth, and Williams, who have both consistently argued that there is no ambiguity in the statute. For this reason, the clear statement rule does not apply. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (explaining that the plain statement rule is a "rule of statutory construction to be applied where statutory intent is ambiguous"). And because the waiver of sovereign immunity is "explicitly and expressly stated in the statute," the rule that a court must not imply such a waiver does not come into play here. *Commonwealth v. Muwahhid*, 77 Va. App. 821, 829 (2023) (quoting *All. to Save the Mattaponi v. Commonwealth Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 455 (2005)).

exclusions and did so in the surrounding subsections of Code § 8.01-195.3, which exclude "[a]ny

claim *arising out of* the institution or prosecution of any judicial or administrative proceeding,"

Code § 8.01-195.3(6) (emphasis added), and claims "*based upon* an act or omission of an officer,

agent or employee of any agency of government in the execution of a lawful order of any court,"

Code § 8.01-195.3(4) (emphasis added). Indeed, every other exemption is for "claims" that are

"based upon" a certain "act or omission," or "arising out of" or "in connection with" certain

actions or events. These subsections exclude claims based on the subject matter of the claim

itself. Added to the statute later, in 1989, subsection (7) is noticeably different. *See* 1989 Va.

Acts. ch. 446. It evaluates claims based on (1) whether the claim is made "by" a specific type of

"claimant"—an inmate, and (2) whether the claimant has verified under oath that she has

exhausted her administrative remedies. Subsection (7) is conspicuously narrow by comparison.[17]

The majority's most convincing argument is based not in text but in policy. It is true that

exhaustion requirements "protect[] 'administrative agency authority' and 'promote[] efficiency'

by encouraging disputes to be resolved 'quickly and economically' during the prelitigation

administrative process." *AlBritton*, 299 Va. at 400 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89

(2006)). While our Supreme Court has explained that these policy rationales support the General

Assembly's decision to include an exhaustion requirement, those policy rationales do not permit

us to impose that requirement where the General Assembly has not manifested an intention to do

so. When public policy arguments "contravene clear statutory language," they "should be

---

[17] As discussed more below, the General Assembly did address claims "relating to" a current, or former, period of incarceration in Code § 8.01-243.2, which sets out the statute of limitations that applies to prisoners bringing "any personal action relating to the conditions of [their] confinement." While the General Assembly knew how to exclude claims by inmates relating to the conditions of incarceration, it chose not to do so in Code § 8.01-195.3(7). *See Chenevert v. Commonwealth*, 72 Va. App. 47, 57 (2020) (The examining court "assume[s] . . . the legislature chose, with care, the words it used when it enacted the relevant statute." (quoting *Coles v. Commonwealth*, 44 Va. App. 549, 557-58 (2004))).

addressed to the legislature, not the courts." *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 474 n.12 (2022). Here, the clear language carries the day.

Requiring inmates to exhaust all remedies if they are incarcerated when a cause of action arises would mean that, applied literally, any inmate released before the exhaustion process is complete would never be able to sue. The grievance process is long. The total time from the start of a complaint to resolution, including authorized continuances, is 180 days.[18] To avoid concluding that any inmate with a sentence shorter than 180 days would be excluded from the VTCA, the majority is forced to rely on an atextual escape clause, affirming that only reasonable compliance with the VTCA is required, so that "[i]f the claimant begins the process and is released before it is completed, the claimant has exhausted all the available remedies." This is a humane work-around, to be sure, but it is not what the plain text says under the majority's telling.

The majority's interpretation also creates tension with the exhaustion requirement within a different statute that requires an inmate to exhaust all remedies, Code § 8.01-243.2. The "inmate statute" states: "No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted." Unlike the VTCA, the "inmate statute is not limited to tort claims," but "deals with all classes of litigation." *Ogunde*, 271 Va. at 644. Interpreting this statute, the Supreme Court explained that someone cannot exhaust her

---

[18] The Virginia Department of Corrections Operating Procedure 866.1 outlines the Offender Grievance Procedure that applies to all units operated by the Virginia Department of Corrections. *See* Virginia Department of Corrections Operating Procedure 866.1: Offender Grievance Procedure (Jan. 1, 2021), https://perma.cc/V9H9-YDDS. There are many phases of the grievance process, including the informal verbal complaint process, the submission of a written complaint, and the filing of a "regular grievance." *Id.* § I(D), at 4-5. Considering all the relevant time periods for submission and staff response, as well as allowable continuances, "[t]he total time allowed from initiation of a complaint to resolution through the regular grievance process is 180 days including authorized continuances." *Id.* § III(F)(2)(a), at 10.

administrative remedies unless she is incarcerated and that it matters whether she has exhausted her remedies before the "filing [of] a personal action" in court, not at the time the cause of action accrues. *Lucas v. Woody*, 287 Va. 354, 361 (2014). "[A]n individual would necessarily need to be confined in order to take advantage of administrative remedies offered by a state or local correctional facility." *Id.*

The inmate statute was "enacted in 1998," after the VTCA "was adopted in 1981." *Ogunde*, 271 Va. at 643. It would be odd for the General Assembly to apply one policy in the later-adopted, broader statute covering all inmate claims, evaluating the exhaustion requirement based on the carceral status of the filer, if the VTCA had already pinned the exhaustion requirement to carceral status at the time of injury.

Before concluding, we acknowledge that *Lucas* found that the statute of limitations in the inmate statute, Code § 8.01-243.2, continues to apply even to those who have been released from incarceration. But *Lucas* reached its conclusion to avoid applying two different statutes of limitations to the same cause of action based on whether a complaint was filed before or after an inmate was released. 387 Va. at 362. This makes sense, as statutes of limitations ordinarily run from the date of injury, and do not fluctuate depending on the status of a claimant. *Id. Lucas*'s analysis is not an issue for our interpretation of the VTCA because the VTCA is "self-contained, incorporating its own statute of limitations, which likewise is self-contained." *Bing v. Haywood*, 283 Va. 381, 386 (2012) (quoting *Ogunde*, 271 Va. at 644). When an inmate brings an action under the VTCA, even when that action is related to her conditions of confinement, the VTCA's statute of limitations applies. *Id.* (citing *Ogunde*, 271 Va. at 643-44). Moreover, procedural prerequisites to filing a suit, such as a claimant's "verifi[cation] under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections," are different than statutes of limitation because

they fasten to litigation, while a statute of limitations begins to run when a claim accrues.

Neither do we take issue with former inmates, released without exhausting their remedies, having an opportunity to file a tort claim under the VTCA while current inmates may not do so. This circumstance is permitted by the statute's language. And the majority has no conceptual issue with it either, because they concede that under their interpretation, different exhaustion requirements will apply based on whether an inmate has a long enough sentence to fully exhaust her remedies.[19]

Our primary duty is to interpret the meaning of the statute based on its text. "[W]e ask 'not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said.'" *Vasquez v. Dotson*, 303 Va. 97, 104 (2024) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). Because the statute says that former inmates who file a complaint under the VTCA are not subject to the VTCA's exhaustion requirement, that is what the statute means. Interpreting the statute this way does not create an unworkable system—nor is it absurd.[20] *Cf.*

---

[19] There is also no textual ambiguity here the way there is in Code § 8.01-243.2's reference to "such person." In *Lucas,* the Supreme Court concluded "such person" was ambiguous as to whether it referred to the person bringing a lawsuit relating to conditions of confinement or also incorporated the condition that the person be incarcerated. 287 Va. at 361-63. This case presents no such textual ambiguity and does not involve an issue of incorporation by reference.

[20] In fact, the Federal Circuits are uniform in interpreting the exhaustion requirement of the Federal Prison Litigation Reform Act (PLRA) the same way. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "In light of the PLRA's plain language . . . a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit." *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). *See also, e.g.*, *Bargher v. White*, 928 F.3d 439, 447-48 (5th Cir. 2019) (explaining that the PLRA's "plain language" would require a court to dismiss the action of a current inmate who fails to comply with such requirements, but would not bind someone who files or "refiles" their complaint upon release from prison); *Cofield v. Bowser*, 247 Fed. App'x 413, 414 (4th Cir. 2007)

*Commonwealth v. Doe*, 278 Va. 223, 230 (2009) ("[A] court must avoid any literal interpretation of a statute that would lead to absurd results."). "Given our commitment to 'neutral principles of interpretation,' we are not 'free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal.'" *Vasquez*, 303 Va. at 104 (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022)). If the General Assembly prefers a different system, then it is for the General Assembly, and not this Court, to amend the statute accordingly.[21]

B. Williams's notice of claim was sufficient to satisfy Code § 8.01-195.6.

Because I would find that Williams was not required to exhaust her remedies since her complaint was filed when she was no longer an inmate, I must briefly address whether she gave sufficient notice of her claim. All litigants asserting claims under the VTCA must clear the procedural hurdle of filing a "notice of claim." Code § 8.01-195.6. Even though Williams was not required to exhaust her administrative remedies under the grievance procedures of VDOC, she still needed to file a notice of claim that complies with Code § 8.01-195.6.

---

(per curiam) (same); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (en banc) ("[Plaintiff] was not subject to the PLRA's exhaustion requirement because he was not a prisoner or otherwise incarcerated when he filed his complaint."); *Witzke v. Female*, 376 F.3d 744, 750 (7th Cir. 2004) (same); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003) (same); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (same); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (same); *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (same); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (per curiam) (same). The Federal Circuit courts are split, however, on the PLRA's use of the word "brought" and the question of "whether a prisoner who fails to comply with that exhaustion requirement may cure the defect by filing an amended or supplemental complaint after his release." *Wexford Health v. Garrett*, 140 S. Ct. 1611, 1611-12 (2020) (Thomas, J., dissenting from denial of certiorari) (identifying circuit split).

[21] As discussed above, the General Assembly did require exhaustion for any individual bringing actions related to the conditions of their confinement under Code § 8.01-243.2, but our Supreme Court has held that the statute of limitations in that code section does not apply to the VTCA, which is self-contained. *See Ogunde*, 271 Va. 639. In the more than 15 years following the decision in *Ogunde*, the General Assembly has not amended the relevant statutes to indicate that these same requirements should in fact apply to claims brought under the VTCA.

The notice of claim requirement is a condition precedent to maintaining a cause of action against the Commonwealth. Relevant here, the notice must include two things: "(1) the time and place at which the injury allegedly occurred and (2) the agency or agencies allegedly liable." *Halberstam v. Commonwealth*, 251 Va. 248, 251 (1996). The Commonwealth has not waived sovereign immunity unless each element is stated with specificity. *Id.* That is because, without "explicit notice in writing of the time and place of an accident," "the likelihood of prompt attention to the matter to protect the interests of the [Commonwealth] and the public is materially diminished." *Bates v. Commonwealth*, 267 Va. 387, 392 (2004) (alteration in original) (quoting *Halberstam*, 251 Va. at 252).

Our Supreme Court has explained that a notice is sufficient under the VTCA if it allows for the "reasonable identification" of the place of injury such that the Commonwealth "is in a position to investigate and evaluate that claim." *Bates*, 267 Va. at 394. Reasonableness is not a bright-line test; it depends on the allegations specific to the case. *Id.*

In *Halberstam*, for example, the plaintiff who fell in a parking lot at George Mason University (GMU) sent a letter to the Director of the Division of Risk Management stating that "a pothole or eroded area in the asphalt of the [GMU] parking lot" caused her to "fall and injure herself." 251 Va. at 250. Because her notice "[did] not specify the location of the injury" beyond noting that it occurred in the "school parking lot" of GMU, and because GMU has several parking lots, *id.* at 251, she failed to describe a location "reasonably calculated" to give the Commonwealth adequate notice under the VTCA, *Bates*, 267 Va. at 394.

Unlike the plaintiff in *Halberstam*, the plaintiff in *Bates* was found to have provided a notice of claim that was sufficient to waive the Commonwealth's sovereign immunity under the VTCA. Bates mailed a notice of claim to the Attorney General of Virginia that designated the place of injury as the "University of Virginia Health Sciences Center, Charlottesville, Virginia."

*Id.* at 390. The Court held that because there was "only one University of Virginia Medical Center in Charlottesville," her notice of claim reasonably identified the location of injury and did not need to include the precise "floor or room." *Id.* at 394-95. Thus, in *Bates*, "reasonable compliance with the requirements of the [VTCA], not perfect compliance, was sufficient to invoke [the Commonwealth's] statutory waiver of sovereign immunity." *Billups v. Carter*, 268 Va. 701, 710 (2004).

Williams sent two notices of claim to the Office of the Attorney General. She sent a handwritten letter on August 20, 2019, which stated that she intended to file a claim "regarding an incident where [she] was hurt during transportation to UVA hospital by corrections officers at Fluvanna Correctional Center." She stated that the "Department of Corrections [we]re at fault" because "upon arriving at the hosp[ital], [she] was dropped backwards while still handcuffed and shackled." According to that notice, the incident occurred on October 10, 2018. The second notice of claim submitted by Williams' counsel on October 8, 2019 served as "further notice" that Williams was pursuing a claim for "injuries sustained by [] Williams while incarcerated at the Fluvanna Correctional Center" and that "on or about" October 10, 2018, "Williams, while at the Fluvanna Correctional Center, was pulled backwards out of a transport van in handcuffs and was dropped to the ground." The notice alleges that the personnel were reckless in causing her to fall and states the intention to seek compensation for her injuries.

The Commonwealth argues that the notices fail to sufficiently identify both the time and place of the injury. Interpreting "time" to require an hour and minute, the Commonwealth says neither notice states the time. As for "place," the Commonwealth relies on an alleged discrepancy between the two notices. While the first notice stated that the incident occurred during "transportation to UVA hospital by corrections officers" and "upon arriving" at the UVA

hospital, the Commonwealth reads the second notice to state that the injury occurred when Williams was "pulled backwards out of a transport van" at the Fluvanna Correctional Center.

The Commonwealth has cited no precedent to support its interpretation of "time" as requiring an hour and minute, versus a date. While "time" could mean the precise *second* something occurred, it can also refer more generally to when something took place. In keeping with our Supreme Court's determination that "reasonable compliance" with the VTCA's notice provision is enough to invoke the waiver of the Commonwealth's immunity, we find that identifying a date was sufficient here to meet this requirement and allow the agency to investigate the underlying incident and respond to the notice of claim. *Billups*, 268 Va. at 710.[22]

We also find that Williams described the place of the injury with enough specificity to pass muster under Code § 8.01-195.6. Both notices state that the place of injury was a VDOC transport van. Williams's notices described the type of vehicle (a transport van that was not handicap-equipped), the owner of the vehicle (VDOC), the operators of the vehicle (VDOC officers), and the location of the vehicle before transporting Williams (Fluvanna). The first notice specifies that the injury occurred when officers tried to remove her from the vehicle upon arriving at UVA Hospital. While it is possible to read the second notice to say the injury occurred at Fluvanna, as the Commonwealth does, it is just as possible to read that notice as

---

[22] Other courts have reached the same conclusion. *See, e.g.*, *Fort Wayne v. Bender*, 105 N.E. 949, 950-51 (Ind. App. 1914) (explaining that the "time of injury" does not "require a particular statement as to whether the accident occurred in the forenoon, or in the afternoon, or in the evening of a given day," or "any statement as to the hour or the minute of the day upon which the injury occurred," but "reasonable certainty requires . . . the date of the injury"); *Lilly v. Woodstock*, 22 A. 40, 42 (Conn. 1890) ("As to the time when the injury was sustained, we see no basis for the claim that naming the correct day is not a sufficient compliance with the letter and the spirit of the statute, though the hour of the day is not named."); *Nova v. Town of Hamden*, No. CV-22-6126940-S, 2023 Conn. Super. LEXIS 723, at \*5 n.5 (May 23, 2023) (collecting Connecticut Superior Court cases finding that a failure to include the time of day in a notice of claim is not a fatal defect). This does not mean that there will not be cases where a day alone is insufficient, and some approximation of the time is necessary to give sufficient notice of a claim. The level of specificity required depends on the facts of the case.

simply stating that Williams was an inmate at Fluvanna at the time the injury occurred, not that the fall from the transport van took place while the van was at Fluvanna.

Unlike the notice in *Halberstam*, designating the "place" of injury as an unidentified parking lot among many possible parking lots, the notices here were specific—the injury occurred while Williams was being removed from a transport van that went between Fluvanna and UVA Hospital. Furthermore, the injury here occurred in a vehicle, a means of conveyance. If Williams had fallen while the van was still moving, the VTCA would not require her to identify the mile marker of where that fall took place. Only one transport van took Williams from Fluvanna to UVA Hospital "on or about October 10." Williams provided enough detail to "reasonably identify" the location of her injury as the non-handicap-equipped transport van into which she was loaded such that the Commonwealth could respond to and investigate her allegations of negligence. *Bates*, 267 Va. at 394.[23]

For these reasons, I would reverse the decision of the circuit court dismissing her complaint and remand for further proceedings.

---

[23] Because we would find that her notices are sufficient, we do not consider whether the Commonwealth had actual knowledge of the incident and injury under Code § 8.01-195.6(A).

# VIRGINIA:

PUBLISHED

*In the Court of Appeals of Virginia on* **Tuesday** *the* **4th** *day of* **June, 2024**.

Dawn Lewis Williams, Appellant,

against           Record No. 1201-22-2
Circuit Court No. CL21000379-00

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, and Frucci

On May 14, 2024, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on April 30, 2024, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

Present:   Judges AtLee, Ortiz and Lorish
Argued at Richmond, Virginia

PUBLISHED

DAWN LEWIS WILLIAMS                                    OPINION BY
                                                      JUDGE LISA M. LORISH
v.        Record No. 1201-22-2                        APRIL 30, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Richard E. Moore, Judge

Seth R. Carroll (Melisa Azak; Commonwealth Law Group, PLLC,
on briefs), for appellant.

Laura H. Cahill, Assistant Attorney General (Jason S. Miyares,
Attorney General; Charles H. Slemp III, Chief Deputy Attorney
General; Maria N. Wittmann, Deputy Attorney General; Richard
C. Vorhis, Senior Assistant Attorney General, on briefs), for
appellee.

While in the custody of the Virginia Department of Corrections ("VDOC"), Dawn

Williams was injured and sent a notice of tort claim to the Office of the Attorney General. She

then filed an initial complaint seeking relief under the Virginia Tort Claims Act ("VTCA"), but

after she was released from prison, she nonsuited her first action and filed a new complaint. The

VTCA waives the Commonwealth's sovereign immunity under certain circumstances, permitting

plaintiffs to bring tort suits against the Commonwealth. But the VTCA specifically excludes

from recovery "[a]ny claim by an inmate of a state correctional facility" unless the "claimant

verifies under oath, by affidavit, that he has exhausted his remedies" under the VDOC grievance

process. Code § 8.01-195.3. We hold that the VTCA requires a reviewing court to assess

whether a claimant is an inmate when the complaint was filed. If so, the claimant must have

exhausted her remedies. Because the operative complaint here was filed when Williams was no

longer an inmate, the VTCA's exclusion does not apply. We also find that Williams's notices of claim were sufficient under the VTCA. We therefore reverse the circuit court's order sustaining the Commonwealth's plea in bar and dismissing Williams's complaint.

BACKGROUND[1]

On October 11, 2018, while incarcerated at Fluvanna Correctional Center ("Fluvanna"), Williams was scheduled to attend a medical appointment at UVA Health University Hospital ("UVA Hospital"). Williams required handicap-equipped transportation to take her from Fluvanna to the appointment. The VDOC officers assigned to transport Williams informed her that a handicap-equipped van was unavailable and that they would instead use a standard transport van. Because Williams had difficulty safely loading herself into the van while shackled, the officers overseeing her transportation requested, and received, authorization to unshackle her so that she could help pull herself inside. When the van arrived at the hospital, one officer called again to request permission to unshackle Williams so she could help herself out of the van. But because they were running late for the appointment, another officer did not wait. Instead, this officer tried to pull Williams out of the van while she was still shackled. The officer lost her balance, fell down, and pulled Williams down with her. As a result, Williams injured several joints.

In August 2019, Williams filed, *pro se*, a handwritten notice of claim with the Office of the Attorney General indicating that she intended to sue VDOC for causing her injuries. She subsequently retained an attorney, who filed "further notice" of her claim with the Attorney General on October 8, 2019.

---

[1] We recite the facts as pleaded in the complaint. *See Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019).

While still incarcerated, Williams filed her first complaint in the Fluvanna Circuit Court a few months later. She alleged that the Commonwealth was liable for the injuries she sustained while being transported to the hospital and sought relief under the VTCA. She did not file an affidavit stating that she had exhausted her remedies under the VDOC's inmate grievance procedures. In response, the Commonwealth filed a plea in bar asserting sovereign immunity.

Before the court ruled on the pending plea in bar, Williams was released from prison. In July 2020, she nonsuited her original action, and refiled her complaint in the Charlottesville Circuit Court a month later, again seeking recovery under the VTCA. The Commonwealth filed another plea in bar asserting that the VTCA did not waive the Commonwealth's sovereign immunity because Williams asserted a "claim by an inmate" under Code § 8.01-195.3(7) and she had not attached an affidavit stating that she exhausted administrative remedies through the VDOC grievance process. The Commonwealth also argued that her notices of claim failed to meet the statutory requirements of Code § 8.01-195.6(A). The circuit court agreed on both fronts, sustaining the Commonwealth's plea in bar and dismissing the complaint.

Williams timely appeals.

ANALYSIS

Williams asks us to reverse the circuit court's decision to sustain the Commonwealth's plea in bar based on its claim of sovereign immunity. Where, as here, "no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). "The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002)). To determine whether the Commonwealth

waived sovereign immunity here, we must interpret several sections of the VTCA, a task we take up de novo. *Wright v. Commonwealth*, 278 Va. 754, 759 (2009).

## I. The exhaustion requirement of Code § 8.01-195.3(7)

"The Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees in the absence of an express constitutional or statutory waiver of sovereign immunity." *Billups v. Carter*, 268 Va. 701, 707 (2004). The VTCA generally waives the Commonwealth's sovereign immunity for claims for money "on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. But the VTCA excludes recovery for certain claims, including "claim[s] by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections." Code § 8.01-195.3(7). Initiating the institutional inmate grievance procedure tolls "the time for filing the notice of tort claim . . . during the pendency of the grievance procedure." *Id.* Thus, the VTCA "partially waives sovereign immunity" for "state prisoners" who comply with the exhaustion requirements of Code § 8.01-195.3(7), but it does not waive immunity for claims by inmates who do not. *AlBritton v. Commonwealth*, 299 Va. 392, 399 (2021).

Along with excluding certain claims, the statute imposes procedural requirements on claimants. To assert a "claim cognizable against the Commonwealth," a plaintiff must first file a "notice of claim" with the Director of the Division of Risk Management or the Attorney General; otherwise, her claim "shall be forever barred." Code § 8.01-195.6(A)-(B). The notice of claim must be "a written statement of the nature of the claim" that both describes the "time and place at which the injury occurred" and designates the agency or agencies the plaintiff seeks to hold

- 4 -

liable for the injury.  Code § 8.01-195.6(A).  The VTCA also requires that the notice of claim be filed "within one year after such cause of action accrued."  *Id.*

The specific language that we must interpret today excludes from recovery: "Any claim by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies."  Code § 8.01-195.3(7).  No party has suggested that we interpret the word "inmate" to mean anything other than what common sense would dictate—that an inmate is someone presently imprisoned in a detention center or in the custody of the VDOC.  *See also Inmate*, *Black's Law Dictionary* (11th ed. 2019) (defining inmate as "[a] person confined in a prison, hospital, or similar institution").  But the tougher question is this: when does it matter whether a claimant is an inmate in evaluating the Commonwealth's sovereign immunity defense?

To understand when claims are barred for failure to exhaust administrative remedies, we look to the text and structure of the VTCA.  "The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'"  *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)).  An appellate court must determine the legislative intent "from the plain meaning of the language used."  *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)).  "Where bound by the plain meaning of the language used, we are not permitted 'to add or to subtract from the words used in the statute.'"  *Coles v. Commonwealth*, 44 Va. App. 549, 557 (2004) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)).  We also evaluate the language in the context "of the entire statute" because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole."  *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)).

Williams asserts that she was not an inmate at the time she filed her most recent complaint and so was not subject to the VTCA's requirement that a "claimant" asserting a "claim by an inmate" must exhaust administrative remedies. Code § 8.01-195.3(7). The Commonwealth urges us to adopt a different interpretation of a "claim by an inmate." In the Commonwealth's view, the claimant's status at the time of *injury*, rather than at the time of filing a *complaint*, controls under the statute. Thus, because Williams sustained her injuries when she was an inmate, the Commonwealth argues that her present complaint asserts "a claim by an inmate" even though she filed it after she was released. On this basis, the Commonwealth argues that her complaint was properly dismissed. Because a cause of action in tort "does not arise until an injury to a plaintiff can be shown," *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 20 (2013), the Commonwealth's position equates the existence of a claim with the accrual of a cause of action.

Along with Williams's complaint theory and the Commonwealth's accrual theory, our dissenting colleague places a third possibility on the table. Black's Law Dictionary defines a "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, *Black's Law Dictionary*, *supra*. As the definition suggests, a "demand for money" may be asserted through a complaint. But a demand for payment could also encompass the written notice of claim that the VTCA requires a claimant provide to the Office of the Attorney General before filing a complaint. Indeed, once a claimant has filed a notice of a claim with the Attorney General or the Division of Risk Management, the Attorney General has the authority to settle those demands before they reach the litigation stage. Code § 8.01-195.5.

Thus, we consider here whether the VTCA's exclusion barring an unexhausted "claim by an inmate" is based on the status of being an "inmate" (1) when a cause of action accrues, (2) when a notice of claim is provided, or (3) when a complaint is filed. Our task is to interpret

- 6 -

what "claim by an inmate" means in the specific context of the exclusion set out in Code § 8.01-195.3(7).

A. The text and context of "claim by an inmate" in Code § 8.01-195.3(7) show that this section focuses on when litigation formally begins through the filing of a complaint.

We note from the start that the main effect of the sovereign's waiver of immunity is to allow an ordinary citizen to do what is normally prohibited—sue the Commonwealth in a state court. "[A]s a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." *Hinchey v. Ogden*, 226 Va. 234, 239 (1983). As addressed above, the VTCA waives the Commonwealth's immunity for "claims . . . of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. This waiver applies to suits filed in the Commonwealth's own courts.[2] The "amount of the claim" determines which court has jurisdiction over a plaintiff's claim. For example, general district courts have "exclusive original jurisdiction to hear, determine, and render judgment on any claim against the Commonwealth . . . when the amount of the claim does not exceed $4,500." Code § 8.01-195.4. When the "amount of [a] claim" increases, circuit courts obtain concurrent or exclusive jurisdiction to hear the claim. *Id.* Thus, the waiver of sovereign immunity allows an individual to initiate a civil suit against the Commonwealth, and the amount of money the plaintiff demands determines where the suit is filed.

---

[2] Federal courts that have addressed the issue have concluded that the VTCA does not waive the Commonwealth's Eleventh Amendment immunity from suits filed in federal court. *See McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *Creed v. Virginia*, 596 F. Supp .2d 930, 934 (E.D. Va. 2009); *Reynolds v. Sheriff, City of Richmond*, 574 F. Supp. 90 (E.D. Va. 1983).

Turning back to Code § 8.01-195.3, this portion of the VTCA describes the claims for which sovereign immunity is waived so that "the Commonwealth shall be liable for claims for money." Then, the statute excludes from its waiver of "liab[ility] for claims for money," "any recovery" based on several types of claims, including "any claim by an inmate" unless the inmate has verified under oath that she has fulfilled certain exhaustion requirements. Code § 8.01-195.3(7). The effect of this exclusion, and the other exclusions in the statute, is to prevent the claimant from holding the Commonwealth "liable" through a lawsuit in the Commonwealth's courts. In other words, in this context, the "claims" excluded from the waiver of immunity refer to claims viable in *litigation*. The web of provisions defining the scope of the Commonwealth's waiver of sovereign immunity, including the notice of claim requirement in Code § 8.01-195.6(A) and the statute of limitations in Code § 8.01-195.7, confirm that when Code § 8.01-195.3 refers to "claims for money" it looks to those claims actually asserted in court during litigation and not during any pre-litigation discussion of potential claims. Each of the exclusions listed in Code § 8.01-195.3, then, should be understood as setting out the circumstances under which the Commonwealth does not waive its sovereign immunity, with the effect of preventing certain *lawsuits* from going forward.

That Code § 8.01-195.3 deals with the viability of claims appearing during litigation is supported by the specific language of section (7), which bars "any recovery" based on "[a]ny claim by an inmate of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies." The natural reading is that an affidavit is filed by the "claimant" with the complaint, which initiates litigation against the Commonwealth. While an inmate may have a right to make a claim for recovery before the complaint is ever filed, the exclusion in Code § 8.01-195.3(7) focuses on when an inmate brings that claim to a court. It is only once the complaint is filed that a court evaluates whether the claimant is an inmate, and thus

- 8 -

whether an affidavit is needed to waive the Commonwealth's sovereign immunity and allow the claimant a "recovery" at law. *Cf. Massenburg*, 298 Va. at 221 (noting that a court may grant a plea in bar and dismiss an action based on sovereign immunity when underlying facts are uncontested). It is also telling that Code § 8.01-195.3(7) does not state that the affidavit must be filed at the point the cause of action accrues, or when a notice of claim is filed. The language of this particular statute plainly affixes the temporal focus of "claim by an inmate" to the time the complaint is filed.

Beyond the exclusions listed in Code § 8.01-195.3, there are several other sections of the VTCA that bar "claim[s]" against the Commonwealth unless the claimant has fulfilled certain requirements. Under Code § 8.01-195.7, "[e]very claim cognizable against the Commonwealth . . . shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed." Further, "[a]ll claims against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the notice of claim, or within two years after the cause of action accrues." Code § 8.01-195.7. Finally, an otherwise cognizable claim shall also "be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim," including details about the injury. Code § 8.01-195.6(A). A claimant's failure to comply with these requirements bars litigation against the Commonwealth. A reviewing court determines whether a claimant has complied with this requirement only when a claim reaches that court, which happens to be the point at which the complaint is filed. The bar to recovery in Code § 8.01-195.3 based on the failure of an inmate to attach an affidavit verifying that she has exhausted her administrative remedies is no different from the other hurdles to litigation in the VTCA—it too is a prerequisite to the Commonwealth's waiver of

- 9 -

sovereign immunity. It follows that a court must evaluate the status of incarceration, which, in turn, affects whether a claimant must file the affidavit, at the time the complaint is filed.

Taking a step back, before concluding, we find that interpreting "claims by an inmate" to focus on the status of the claimant at the time the complaint is filed is the only way to make sense of the way the sovereign immunity provisions of the VTCA repeatedly differentiate between when a "cause of action accrues," the filing of a "notice of claim," and the "claim" itself. *See* Code § 8.01-195.6 (barring "claims" unless the claimant "has filed" a notice of the claim "within one year after such cause of action accrued"); Code § 8.01-195.7 ("All *claims* against the Commonwealth . . . shall be forever barred unless such action is commenced within 18 months of the filing of the *notice of claim*, or within two years after the *cause of action accrues*." (emphases added)). For a claim to survive the Commonwealth's sovereign immunity defense, the VTCA requires a series of events to occur in a particular order: a cause of action accrues, a notice of claim is filed, and then a claim is made in court. Without following the first two steps of this process, all claims "shall be forever barred" in the *future*. When it comes to sovereign immunity, the VTCA targets the time an action is filed, and so it is then that a court must evaluate a claimant's compliance with all these provisions. And if that claimant is an inmate at the time of filing, that includes complying with the grievance procedure.

B. The Commonwealth's suggestion that "claim by an inmate" focuses on when the cause of action accrued clashes with the text of the VTCA.

The Commonwealth argues that a "claim" is "the occurrence of an aggregate set of facts giving rise to a potential right to recover recognized by law," which is essentially the accrual of the cause of action. While this is a theoretically plausible definition of claim, it is not how the General Assembly used the term in Code § 8.01-195.3(7). First, as we have said, the VTCA repeatedly distinguishes between the accrual of the cause of action and when a "claimant" initiates a claim by filing a lawsuit. This suggests that the accrual of the cause of action is

- 10 -

distinct from the "claim" itself.  Additionally, the exclusion applies to "claim[s]" made "by" an inmate, which suggests that a claim is a demand or request of some sort rather than a set of facts that "occur[s]."  In plain speech, the "occurrence of a set of facts" or the occurrence of a particular injury, cannot be made "by" someone.  Instead, the *complaint* is the demand for relief that is filed "by" the inmate along with the affidavit verifying that the inmate has exhausted her administrative remedies.  *See AlBritton*, 299 Va. at 398 ("[The inmate's] complaint included an affidavit stating that he had 'exhausted the administrative remedies of the adult institutional inmate grievance procedure to the extent required . . . .'").

The Commonwealth's primary argument to the contrary is not based in text, but policy.  The Commonwealth argues that the exhaustion requirement is not intended to create a barrier to filing a claim in court, and relies on the premise that exhaustion requirements "protect[] 'administrative agency authority' and 'promote[] efficiency' by encouraging disputes to be resolved 'quickly and economically' during the prelitigation administrative process."  *Id.* at 399-400 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  While our Supreme Court has explained that these policy rationales support the General Assembly's decision to include an exhaustion requirement, those policy rationales do not permit us to impose that requirement where the General Assembly has not manifested an intention to do so.  When public policy arguments "contravene clear statutory language," they "should be addressed to the legislature, not the courts."  *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 474 n.12 (2022).  The clear language carries the day here.

Rewriting the statute to require a former inmate—someone who is no longer in the custody of VDOC—to have exhausted administrative remedies before suing under the VTCA would lead to the odd result that the word "inmate" would apply to any individual who had ever

been detained in the VDOC, rather than just those who are currently detained.[3]  That would

include individuals released from custody before the grievance process can be started, or

completed.[4]  But "an individual would necessarily need to be confined in order to take advantage

of administrative remedies offered by a state or local correctional facility." *Lucas v. Woody*, 287

Va. 354, 361 (2014).  Interpreting Code § 8.01-243.2, a statute outside the VTCA that imposes

limitations on personal actions relating to conditions of confinement in local correctional

facilities, the Supreme Court explained that someone cannot exhaust her administrative remedies

unless she is incarcerated and that it matters whether she has exhausted her remedies before the

"filing [of] a personal action" in court, not at the time the cause of action accrues.  *Id.* at 361,

363.  Thus, consistent with the Supreme Court's interpretation of Code § 8.01-243.2, exhaustion

---

[3] *See Page v. Torrey*, 201 F.3d 1136, 1139-40, 1139 n.5 (9th Cir. 2000) (holding that "only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 28 U.S.C. § 1915 and 42 U.S.C. § 1997e," and noting that reading the statute to include individuals who are "currently detained and who *have in the past been* accused of, convicted of, or sentenced for a criminal offense," rather than merely those who are currently detained, "produces an absurd result").

[4] The length of time to complete the grievance procedure is significant enough that the General Assembly included a provision tolling the one-year period of time to file a written notice of claim during the pendency of the grievance procedure.  The Virginia Department of Corrections Operating Procedure 866.1 outlines the Offender Grievance Procedure that applies to all units operated by the Virginia Department of Corrections.  *See* Virginia Department of Corrections Operating Procedure 866.1: Offender Grievance Procedure (Jan. 1, 2021), https://perma.cc/V9H9-YDDS. There are many phases of the grievance process, including the informal verbal complaint process, the submission of a written complaint, and the filing of a "regular grievance."  *Id.* § I(D), at 4-5.  Considering all the relevant time periods for submission and staff response, as well as allowable continuances, "[t]he total time allowed from initiation of a complaint to resolution through the regular grievance process is 180 days including authorized continuances."  *Id.* § III(F)(2)(a), at 10.  We do not think the General Assembly intended to exclude anyone serving a shorter sentence from being able to sue the Commonwealth for mistreatment during a period of incarceration.

- 12 -

requirements do not apply to former inmates, and we evaluate whether an inmate has satisfied such requirements at the time of filing the complaint.[5]

Finally, the Commonwealth's interpretation would require us to rewrite "claim by an inmate" to instead state, "claim arising out of a period of confinement" or "claim based on an occurrence during a period of confinement." The General Assembly knew how to cast a wider net of exclusions and did so in the surrounding subsections of Code § 8.01-195.3. For example, the VTCA excludes "[a]ny claim *arising out of* the institution or prosecution of any judicial or administrative proceeding," Code § 8.01-195.3(6) (emphasis added), and claims "*based upon* an act or omission of an officer, agent or employee of any agency of government in the execution of a lawful order of any court," Code § 8.01-195.3(4) (emphasis added). The language in Code § 8.01-195.3(7) is conspicuously narrow by comparison. What is more, as discussed above, the General Assembly did address claims "relating to" a current, or former, period of incarceration in

---

[5] While *Lucas* aids our understanding of when a court evaluates exhaustion requirements, we acknowledge that *Lucas* came to a much different conclusion in finding that the statute of limitations set out in Code § 8.01-243.2 applies even to those who have been released from incarceration. This statute, however, is distinguishable from Code § 8.01-195.3(7). For one, the statute lacks the "claim by an inmate" language. For another, the *Lucas* Court reached its conclusion in part because the Court was concerned about applying two different statutes of limitations to the same cause of action, 387 Va. at 362, something that is not an issue for the VTCA because the VTCA is "self-contained, incorporating its own statute of limitations, which likewise is self-contained," *Bing v. Haywood*, 283 Va. 381, 386 (2012) (quoting *Ogunde v. Commonwealth*, 271 Va. 639, 643-44 (2006)). When an inmate brings an action pursuant to the VTCA, even when that action is related to her conditions of confinement, the VTCA's statute of limitations applies. *Bing*, 283 Va. at 386 (citing *Ogunde*, 271 Va. at 643-44). This makes sense, as statutes of limitations ordinarily run from the date of injury, and do not fluctuate depending on the status of a claimant. *Lucas*, 387 Va. at 362. In contrast, procedural prerequisites to filing a lawsuit, such as a claimant's "verifi[cation] under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections" are logically and temporally focused on the circumstances that exist at the time of the filing of the lawsuit, including the status of the claimant. Finally, we note that the Supreme Court considered Code § 8.01-243.2's reference to "such person" to be ambiguous in terms of whether it referred merely to the person bringing a lawsuit relating to conditions of confinement or whether it also incorporated the condition that the person be incarcerated. *Id.* at 361-62. This case presents no such textual ambiguity and does not involve an issue of incorporation by reference.

- 13 -

Code § 8.01-243.2, which sets out the statute of limitations that applies to prisoners bringing cases that accrued for "any personal action relating to the conditions of [their] confinement." While the General Assembly knew how to exclude claims by inmates relating to the conditions of incarceration, it chose not to do so in Code § 8.01-195.3(7). *See Chenevert v. Commonwealth*, 72 Va. App. 47, 57 (2020) (The examining court "assume[s] . . . the legislature chose, with care, the words it used when it enacted the relevant statute." (second alteration in original) (quoting *Coles v. Commonwealth*, 44 Va. App. 549, 557-58 (2004))).

To wrap up, we cannot read into the statute words that are not supported by the full context of the statute, or legislative intent, and so we cannot accept the Commonwealth's position.

C. The dissent's argument that a "claim by an inmate" occurs when a notice of claim is filed is unworkable given the text of Code § 8.01-195.3(7) and the rest of the VTCA's sovereign immunity provisions.

The dissent argues that we should interpret "claim" using its ordinary meaning and that under that meaning, a claim exists well before a complaint is filed. We agree that the word "claim" can generally mean a demand for money that exists, or is made, before litigation—and we also recognize that some parts of the VTCA arguably use the word that way.[6] But we must give the undefined phrase, "claim by an inmate" its "ordinary meaning, *given the context in which it is used*." *Taylor v. Commonwealth*, 298 Va. 336, 342 (2020) (emphasis added). That

---

[6] The dissent primarily points to Code § 8.01-195.5 which sets out the Attorney General's "authority . . . to compromise and settle claims," and the fact that Code § 8.01-195.7 states that a lawsuit may only proceed "upon the denial of the claim by the Attorney General," or the expiration of "six months from the date of filing the notice of claim." We agree that the Attorney General has the authority to settle a claim before it is asserted in litigation and that the purpose of the notice requirement is to allow the Commonwealth to "investigate and evaluate that claim." *Bates v. Commonwealth*, 267 Va. 387, 394 (2004). But there are no questions about sovereign immunity in this pre-litigation stage. The point at which it matters whether the Commonwealth has waived sovereign immunity is at the litigation stage.

- 14 -

context is Code § 8.01-195.3(7), which outlines the parameters for when the Commonwealth waives its sovereign immunity to allow claims to proceed *in court*.

Our interpretation of "claim by an inmate" in this portion of the VTCA tracks with the other sections of the VTCA relevant to the Commonwealth's sovereign immunity, as discussed above. *See, e.g.*, Code § 8.01-195.7 ("Every claim cognizable against the Commonwealth . . . shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed."); Code § 8.01-195.6(A) (An otherwise cognizable "claim" shall also "be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim," including details about the injury.). In contrast, the dissent's proposed interpretation of "claim by an inmate" is unworkable given the three distinct stages the VTCA requires for a suit to fall within the Commonwealth's waiver of sovereign immunity: (1) a cause of action accrues, (2) a notice of claim is filed, and (3) a claim may be cognizable in litigation against the Commonwealth.

Under the dissent's proposed interpretation of "claim by an inmate," a court would have to evaluate whether a purported claimant possessed a viable "claim" prior to, or at the same time as, the filing of the notice of claim. The "claim" would then exist simultaneously with the "notice of claim" in which case the VTCA would not need to state that a qualifying "claim" shall "be forever barred" without the filing of a written statement of the nature of the claim. Code § 8.01-195.6(A). Instead, the claim would simply not exist until notice was filed with the appropriate office. But the statute does not read this way—indeed, it distinguishes clearly between the claim itself, which is barred if no *prior* notice of claim is filed, and the filing of the notice of claim. *See Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 570 (2017) (noting that courts must avoid interpreting a statute in a way that leads to "absurd results," or "situations in which the law would be internally inconsistent or otherwise incapable of operation").

Finally, the dissent's proposed interpretation is unmanageable textually. We recognize that the notice of claim is a "written statement of the nature of the claim." And we must give effect to the phrase "nature of," which the text tells us describes the features of the claim, including "the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable," not a "demand" for money or an "assert[ion] of a right" to a particular remedy. Code § 8.01-195.6(A). The dissent would read "nature of" out of the statute altogether, something we are discouraged from doing. *See City of Richmond v. Va. Elec. & Power Co.*, 292 Va. 70, 75 (2016) ("[E]very act of the legislature should be read so as to give reasonable effect to every word." (quoting *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008))).

This interpretation also runs into trouble because the full text of Code § 8.01-195.3(7) excludes any "*claim* by an inmate . . . unless the *claimant* verifies under oath, by affidavit, that he has exhausted his remedies . . . ." (Emphases added). If a claimant is the person making the claim, the dissent's reading seems to require the claimant to verify under oath, by affidavit, that he has exhausted his remedies at the time the written statement of the nature of the claim is filed. But under the VTCA, the affidavit is filed with the complaint. *See AlBritton*, 299 Va. at 398 ("[The inmate's] complaint included an affidavit stating that he had 'exhausted the administrative remedies of the adult institutional inmate grievance procedure to the extent required . . . .'").

In conclusion, we hold that a "claim by an inmate" under the VTCA is a complaint, or the initiation of a lawsuit, asserted by someone who is currently under the custody and control of a state correctional facility. When Williams filed her most recent complaint in Charlottesville Circuit Court, she was no longer incarcerated. Thus, she did not assert "a claim by an inmate," and was not required to "verif[y] under oath, by affidavit that that [s]he has exhausted [her]

remedies under the adult institutional inmate grievance procedures promulgated by the

Department of Corrections." Code § 8.01-195.3(7).[7]

Before moving on, we briefly note that the effect of our holding today on the applicability

of the exhaustion requirement is only marginally greater than the effect of the dissent's

alternative interpretation. Under the dissent's reading of Code § 8.01-195.3(7), any person who

is injured while incarcerated and has less than one year remaining to serve on their sentence no

longer needs to exhaust their administrative remedies. Consistent with Code § 8.01-195.6(A),

that person has one year to submit a notice of claim to the Attorney General, and may do so after

they are released. At this point, the person is no longer an inmate, and, as the dissent sees it, is

not subject to the exhaustion requirement. The most recent publicly available data from the

Virginia Criminal Sentencing Commission reveals that *over half* of the defendants sentenced to

any period of incarceration in Virginia receive a sentence of one year or less of incarceration.[8]

Under the dissent's interpretation, unless these individuals are serving for one year exactly, and

are injured on day one, they may forgo filing their notice of claim until they are released, and in

so doing, avoid the VTCA requirement that "inmates" exhaust their administrative remedies. As

---

[7] We are reminded that "the nonsuit privilege cannot be denied because a claimant has surmised the probable outcome of the litigation and has avoided an unfavorable judgment by taking a nonsuit." *Clark v. Clark*, 11 Va. App. 286, 294 (1990). Similarly, we do not change our construction of the statute simply because a claimant may use pleading rules for their own benefit. *Id.* at 293-94 (refusing to broaden the scope of Code § 8.01-243.2 to include nonsuits in foreign jurisdictions merely because plaintiff exercised his right to a nonsuit in a foreign country and again in Virginia, even though such a construction permits "strategic forum shopping").

[8] *See* Virginia Criminal Sentencing Commission Dashboard Data FY18-FY20 (Apr. 16, 2024), https://perma.cc/8JJF-489H. The disposition summary section of the Dashboard states that for Fiscal Years 2018 through 2020, 30.2% of defendants were sentenced to no period of incarceration, 33.8% were sentenced to prison, and 36% were sentenced to jail. As the first ReadMe tab of the file explains, a sentence to jail is "up to 12 months," whereas a sentence to prison is "greater than 12 months."

- 17 -

can anyone who received a longer sentence but was injured with less than a year remaining to serve.[9]

Compared to the dissent's interpretation, our conclusion that a "claim by an inmate" refers to when a complaint is filed only marginally increases the group of inmates who are effectively exempted from the VTCA's exhaustion requirement to include those who sustain injuries during their last 12 to 24 months in prison. This is because all claims under the VTCA must be filed within two years of the day the cause of action accrues, subject to tolling not relevant here. Code § 8.01-195.7. In other words, an inmate who is injured while having at least two years and one day left to serve would still be an inmate at the time the complaint was filed, and would be required under Code § 8.01-195.3(7) to file an affidavit verifying that they have exhausted their remedies.

Our primary duty is to interpret the meaning of the statute based on its text. "[W]e ask 'not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said.'" *Vasquez v. Dotson*, ___ Va ___, ___ (Apr. 18, 2024) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). Because the statute says that former inmates who file a complaint under the VTCA are not subject to the VTCA's exhaustion requirement, that is what the statute means. Interpreting the statute this way does not create an unworkable system—nor is it absurd.[10] *Cf.*

_____

[9] We also observe that earned sentence credit under Code § 53.1-202.3 means that many inmates with sentences of up to 18 months will actually also serve less than 1 year, and thus be similarly able to forgo the exhaustion requirement.

[10] In fact, the Federal Circuits are uniform in interpreting the exhaustion requirement of the Federal Prison Litigation Reform Act (PLRA) the same way. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "In light of the PLRA's plain language . . . a plaintiff who seeks to bring suit about prison life after he has

*Commonwealth v. Doe*, 278 Va. 223, 230 (2009) ("[A] court must avoid any literal interpretation of a statute that would lead to absurd results."). "[G]iven our commitment to 'neutral principles of interpretation,' we are not 'free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal.'" *Vasquez*, ___ Va. at ___ (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022)). If the General Assembly prefers a different system, then it is for the General Assembly, and not this Court, to amend the statute accordingly.[11]

## II. The sufficiency of the notice of claim

As discussed above, all litigants asserting claims under the VTCA must clear the procedural hurdle of filing a "notice of claim." Code § 8.01-195.6. Even though Williams was

been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit." *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). *See also, e.g.*, *Bargher v. White*, 928 F.3d 439, 447-48 (5th Cir. 2019) (explaining that the PLRA's "plain language" would require a court to dismiss the action of a current inmate who fails to comply with such requirements, but would not bind someone who files or "refiles" their complaint upon release from prison); *Cofield v. Bowser*, 247 Fed. Appx. 413, 414 (4th Cir. 2007) (per curiam) (same); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (en banc) ("[Plaintiff] was not subject to the PLRA's exhaustion requirement because he was not a prisoner or otherwise incarcerated when he filed his complaint."); *Witzke v. Female*, 376 F.3d 744, 750 (7th Cir. 2004) (same); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (same); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (same); *Page*, 201 F.3d at 1140 (same); *Greig v. Goord*, 169 F.3d 167 (2d Cir. 1999) (per curiam). The Federal Circuit courts are split, however, on the PLRA's use of the word "brought" and the question of "whether a prisoner who fails to comply with that exhaustion requirement may cure the defect by filing an amended or supplemental complaint after his release." *Wexford Health v. Garrett*, 140 S. Ct. 1611, 1611-12 (2020) (Thomas, J., dissenting from denial of certiorari) (identifying circuit split).

[11] As discussed above, the General Assembly did require exhaustion for any individual bringing actions related to the conditions of their confinement in Code § 8.01-243.2, but our Supreme Court has held that this statute does not apply to the VTCA, which is self-contained. *See Ogunde*, 271 Va. 639. In the more than 15 years following the decision in *Ogunde*, the General Assembly has not amended the relevant statutes to indicate that these same requirements should in fact apply to claims brought under the VTCA.

- 19 -

not required to exhaust her administrative remedies under the grievance procedures of VDOC, she needed to file a notice of claim that complies with Code § 8.01-195.6.

The notice of claim requirement is a condition precedent to maintaining a cause of action against the Commonwealth. Relevant here, the notice must include two things: "(1) the time and place at which the injury allegedly occurred and (2) the agency or agencies allegedly liable." *Halberstam v. Commonwealth*, 251 Va. 248, 251 (1996). The Commonwealth will not be held to have waived sovereign immunity unless each element is stated with specificity. *Id.* That is because, without "explicit notice in writing of the time and place of an accident," "the likelihood of prompt attention to the matter to protect the interests of the [Commonwealth] and the public is materially diminished." *Bates v. Commonwealth*, 267 Va. 387, 392 (2004) (alteration in original) (quoting *Halberstam*, 251 Va. at 252).

Our Supreme Court has explained that a notice is sufficient under the VTCA if it allows for the "reasonable identification" of the place of injury such that the Commonwealth "is in a position to investigate and evaluate that claim." *Id.* at 394. Reasonableness is not a bright-line test; it depends on the allegations specific to the case. *Id.* In *Halberstam*, for example, the plaintiff who fell in a parking lot at George Mason University (GMU) sent a letter to the Director of the Division of Risk Management stating that "a pothole or eroded area in the asphalt of the [GMU] parking lot" caused her to "fall and injure herself." *Halberstam*, 251 Va. at 250. Because her notice "[did] not specify the location of the injury" beyond noting that it occurred in the "school parking lot" of GMU, and because GMU has several parking lots, *id.* at 251, she failed to describe a location "reasonably calculated" to give the Commonwealth adequate notice under the VTCA, *Bates*, 267 Va. at 394.

Unlike the plaintiff in *Halberstam*, the plaintiff in *Bates* was held to have provided a notice of claim that was sufficient to waive the Commonwealth's sovereign immunity under the

VTCA. Bates mailed a notice of claim to the Attorney General of Virginia that designated the place of injury as the "University of Virginia Health Sciences Center, Charlottesville, Virginia." *Bates*, 267 Va. at 390. The Court held that because there was "only one University of Virginia Medical Center in Charlottesville," her notice of claim reasonably identified the location of injury, and did not need to include the precise "floor or room." *Id.* at 394-95. Thus, in *Bates*, "reasonable compliance with the requirements of the [VTCA], not perfect compliance, was sufficient to invoke [the Commonwealth's] statutory waiver of sovereign immunity." *Billups*, 268 Va. at 710.

Williams sent two notices of claim to the Office of the Attorney General. She sent a handwritten letter on August 20, 2019, which stated that she intended to file a claim "regarding an incident where [she] was hurt during transportation to UVA hospital by corrections officers at Fluvanna Correctional Center." She stated that the "Department of Corrections [we]re at fault" because "upon arriving at the hosp[ital], [she] was dropped backwards while still handcuffed and shackled." According to that notice, the incident occurred on October 10, 2018. The second notice of claim submitted by Williams' counsel on October 8, 2019 served as "further notice" that Williams was pursuing a claim for "injuries sustained by [] Williams while incarcerated at the Fluvanna Correctional Center" and that "on or about" October 10, 2018, "Williams, while at the Fluvanna Correctional Center, was pulled backwards out of a transport van in handcuffs and was dropped to the ground." The notice alleges that the personnel were reckless in causing her to fall and states the intention to seek compensation for her injuries.

The Commonwealth argues that the notices fail to sufficiently identify both the time and place of the injury. Interpreting "time" to require an hour and minute, the Commonwealth says neither notice states the time. As for "place," the Commonwealth relies on an alleged discrepancy between the two notices. While the first notice stated that the incident occurred

during "transportation to UVA hospital by corrections officers" and "upon arriving" at the UVA Hospital, the Commonwealth reads the second notice to state that the injury occurred when Williams was "pulled backwards out of a transport van" at the Fluvanna Correctional Center.

The Commonwealth has cited no precedent to support its interpretation of "time" as requiring an hour and minute, versus a date. While "time" could mean the precise *second* something occurred, it can also refer more generally to when something took place. In keeping with our Supreme Court's determination that "reasonable compliance" with the VTCA's notice provision is enough to invoke the waiver of the Commonwealth's immunity, we find that identifying a date was sufficient here to meet this requirement and allow the agency to investigate the underlying incident and respond to the notice of claim. *Billups*, 268 Va. at 710.[12]

We also find that Williams described the place of the injury with enough specificity to pass muster under Code § 8.01-195.6. Both notices state that the place of injury was a VDOC transport van. Williams's notices described the type of vehicle (a transport van that was not handicap-equipped), the owner of the vehicle (VDOC), the operators of the vehicle (VDOC officers), and the location of the vehicle before transporting Williams (Fluvanna). The first notice specifies that the injury occurred when officers tried to remove her from the vehicle upon arriving at UVA Hospital. While it is possible to read the second notice to say the injury occurred at Fluvanna, as the Commonwealth does, it is just as possible to read that notice as

---

[12] Other courts have reached the same conclusion. *See, e.g.*, *Fort Wayne v. Bender*, 105 N.E. 949, 950-51 (Ind. Ct. App. 1914) (explaining that the "time of injury" does not "require a particular statement as to whether the accident occurred in the forenoon, or in the afternoon, or in the evening of a given day," or "any statement as to the hour or the minute of the day upon which the injury occurred," but "reasonable certainty requires . . . the date of the injury"); *Lilly v. Woodstock*, 22 A. 40, 42 (Conn. 1890) ("As to the time when the injury was sustained, we see no basis for the claim that naming the correct day is not a sufficient compliance with the letter and the spirit of the statute, though the hour of the day is not named."); *Nova v. Town of Hamden*, No. CV-22-6126940-S, 2023 Conn. Super. LEXIS 723, at *5 n.5 (May 23, 2023) (collecting Connecticut Superior Court cases finding that a failure to include the time of day in a notice of claim is not a fatal defect).

simply stating that Williams was an inmate at Fluvanna at the time the injury occurred, not that the fall from the transport van took place while the van was at Fluvanna.

Unlike the notice in *Halberstam*, designating the "place" of injury as an unidentified parking lot among many possible parking lots, the notices here were specific—the injury occurred while Williams was being removed from a transport van that went between Fluvanna and UVA Hospital. Furthermore, the injury here occurred in a vehicle, a means of conveyance. If Williams had fallen while the van was still moving, the VTCA would not require her to identify the mile marker of where that fall took place. Only one transport van took Williams from Fluvanna to UVA Hospital "on or about October 10." Williams provided enough detail to "reasonably identify" the location of her injury as the non-handicap-equipped transport van into which she was loaded such that the Commonwealth could respond to and investigate her allegations of negligence. *Bates*, 267 Va. at 394.

We hold that circuit court erred in sustaining the Commonwealth's plea in bar of sovereign immunity on the ground that Williams's notices of claims were defective.[13]

CONCLUSION

Because Williams was not an inmate when she filed the complaint, she was not required to file an affidavit stating that she had exhausted her administrative remedies. And her notices of claim complied with the VTCA. Thus, we reverse the decision of the circuit court dismissing her complaint and remand for further proceedings.

*Reversed and remanded.*

---

[13] Because we find that her notices are sufficient, we need not consider whether the Commonwealth had actual knowledge of the incident and injury under Code § 8.01-195.6(A).

AtLee, J., dissenting.

Code § 8.01-195.3(7) excludes from the VTCA's waiver of sovereign immunity "[a]ny claim by an inmate of a state correctional facility . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the Department of Corrections." Because I would find that the claim is made when the claimant files the notice of claim, I would affirm the decision of the circuit court.[14] Therefore, I respectfully dissent.

The Supreme Court has repeatedly held that "the doctrine of sovereign immunity is alive and well in Virginia." *Phelan v. Commonwealth*, 291 Va. 192, 195 (2016) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002)). Unless there is an express statutory or constitutional provision waiving sovereign immunity, "the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *Id.* (quoting *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001)). Through the VTCA, "the General Assembly has provided an 'express but limited waiver of the Commonwealth's immunity from tort claims.'" *Id.* (quoting *Melanson*, 261 Va. at 181). The VTCA is "in derogation of common law, and, therefore, its limited waiver of immunity must be strictly construed." *Melanson*, 261 Va. at 181.

The VTCA waives the Commonwealth's immunity for claims of money "on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment." Code § 8.01-195.3. But it excludes recovery for "claim[s] by an inmate of a state correctional facility, as defined in § 53.1-1, unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the

---

[14] Because I would find that Williams did not fulfill the exhaustion requirement, I would not reach the issue of whether Williams's notices of claim were legally sufficient.

- 24 -

Department of Corrections."[15]  Code § 8.01-195.3(7).  The majority finds that the relevant time for evaluating a claimant's status is at the time the complaint is filed.  I would find that the plain language of the VTCA and the ordinary meaning of the word "claim" require us to find that the claim is made at the time the claimant provides the notice of claim to the Commonwealth.

"When construing a statute, our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'"  *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)).  "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used."  *Matzuk v. Price*, 70 Va. App. 474, 483 (2019) (quoting *Jones v. Commonwealth ex rel. Moll*, 295 Va. 497, 504 (2018)); *see also Dietz v. Commonwealth*, 294 Va. 123, 133 (2017) (applying the "ordinary and plain meaning" of words not defined in a statute (quoting *Hilton v. Commonwealth*, 293 Va. 293, 299 (2017))).  To find the ordinary and plain meaning of a word, "courts can look to dictionary definitions," *Davenport v. Util. Trailer Mfg.*, 74 Va. App. 181, 196 (2022), or "pertinent analysis in prior case[s]," *Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019).

Black's Law Dictionary defines "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for," or "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing."  *Claim*, *Black's Law Dictionary* (11th ed. 2019).  Relying on Websters Third New

---

[15] Exhaustion is required so long as the claimant had the temporal opportunity to exhaust his or her administrative remedies.

International Dictionary, the Supreme Court has defined "claim" as "'an authoritative or challenging request,' 'a demand of a right or supposed right,' or 'a calling on another for something due or supposed to be due.'" *Stamie E. Lyttle Co. v. Cnty. of Hanover*, 231 Va. 21, 26 n.4 (1986) (quoting *Claim*, *Webster's Third New International Dictionary* (1981)). These definitions suggest that "claim" requires some sort of action, such as making a demand or asserting a right, which suggests that it is more than the occurrence of an injury as argued by the Commonwealth.[16] And, as noted by the majority, this is also consistent with the language of Code § 8.01-195.3(7), which describes a claim "by" an inmate. Although a claim can be asserted through a complaint, definitionally, it also encompasses the written notice of claim that the VTCA requires a claimant to provide to the Commonwealth before filing a complaint.[17]

Beyond the ordinary meaning of the word, the general process for pursuing a claim against the Commonwealth also indicates that the claim exists and is made well before a complaint is filed. *See Geico Advantage Ins. Co. v. Miles*, 301 Va. 448, 455 (2022) ("[W]ords in

---

[16] The Commonwealth makes a strong argument that the appropriate time to evaluate the status of the claimant is at the time of the injury. Practically speaking, the Commonwealth's position is perhaps the most consistent with the purpose of the exhaustion requirement. *See AlBritton v. Commonwealth*, 299 Va. 392, 399-400 (2021) ("The exhaustion requirement 'protects "administrative agency authority"' and 'promotes efficiency' by encouraging disputes to be resolved 'quickly and economically' during the prelitigation administrative process." (quoting *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006))). The Commonwealth's position is also consistent with the distinction between when a claim is created (i.e., when a cause of action accrues, here when the allegedly tortious conduct causing personal injury occurred) versus when a claim is asserted such as by making a demand or request of some kind. The VTCA appears to refer to when the claim is asserted because Code § 8.01-195.3(7) describes claims "by" an inmate, which, consistent with the dictionary definition of claim, suggests that a demand or request of some sort must be made.

[17] The majority contends that my interpretation of the statute would read "nature of" out of the statute. I disagree. The majority points out that the "nature of" the claim "describes the features of the claim, including 'the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable,' not a 'demand' for money or an 'assert[ion] of a right' to a particular remedy." I agree that the notice of claim does not include an express demand for money. I would find, however, that describing an injury and the liable agency is, by its very nature, an assertion of a right to recovery against the Commonwealth.

a statute are to be construed according to their ordinary meaning, given the context in which they are used." (alteration in original) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993))). Code § 8.01-195.6 requires a claimant to file a notice of claim. A notice of claim is "a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable." Code § 8.01-195.6(A); *see also* Code § 8.01-196.7 ("Every claim cognizable against the Commonwealth or a transportation district under this article shall be forever barred, unless within one year after the cause of action accrues to the claimant the notice of claim required by § 8.01-195.6 is properly filed."). The purpose of the notice requirement is to "provide notice to the Commonwealth of a facially cognizable claim so that the Commonwealth is in a position to *investigate and evaluate that claim*." *Bates v. Commonwealth*, 267 Va. 387, 394 (2004) (emphasis added). Once it has investigated the claim, the Commonwealth can then determine whether it wants to settle the claim prior to litigation or deny the claim. Code § 8.01-195.5. This is often referred to as the claim stage. For the Commonwealth to investigate and make a decision about the claim, logically, a claim must already have been made.

Even the statutory language setting out the authority of the Attorney General and the Director of the Division of Risk Management to settle a claim supports this interpretation. While the Attorney General has the authority to settle a claim at any point, the Director of the Division of Risk Management may only "adjust, compromise and settle claims against the Commonwealth cognizable under this article *prior* to the commencement of suit unless otherwise directed by the Attorney General." Code § 8.01-195.5 (emphasis added). That the Director of the Division of Risk Management can only settle a claim prior to the "commencement of suit," *i.e.*, the filing of a complaint, necessarily means that a claim has been made against the Commonwealth prior to that point.

Further, Code § 8.01-195.7 establishes that a claimant may only proceed with a lawsuit (1) "upon the denial of the claim by the Attorney General or the Director of the Division of Risk Management" or (2) "after the expiration of six months from the date of filing the notice of claim unless, within that period, the claim has been compromised and discharged pursuant to § 8.01-195.5." This language again indicates that the "claim" exists and is made prior to the filing of the complaint. Finding that a "claim by an inmate" is not made until the complaint is filed directly contradicts the way claim is used in these provisions. *See Eberhardt v. Fairfax Cnty. Emp.'s Ret. Sys. Bd. of Tr.*, 283 Va. 190, 195 (2012) ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning.").

I recognize that there are provisions in the VTCA that seem to suggest a different interpretation. Indeed, the majority has done an excellent job analyzing the statutory language and crafting a persuasive argument concluding that "claim by an inmate" refers to the time the complaint is filed.[18] But in those provisions, the General Assembly uses both "claim" and "action" or "suit." [19] *See, e.g.*, Code § 8.01-195.7 (An "action," which is initiated by filing a complaint, "may be commenced . . . upon denial of the claim by the Attorney General or the Director of the Division of Risk Management."); Code § 8.01-195.5 (The Director of the Division of Risk Management has authority to "settle claims against the Commonwealth . . .

---

[18] Other provisions seem to support the Commonwealth's position that a claim exists when the injury occurred. Indeed, that the claimant has remedies to exhaust through the Department of Corrections before he or she even turns to the VTCA suggests that a claim exists during that process. The exhaustion requirement is not simply a "gratuitous roadblock to prisoner litigation." *AlBritton*, 299 Va. at 399. "[E]xhaustion statutes in the prison-litigation context are intended to 'reduce the quantity and improve the quality of prisoner suits.'" *Id.* (quoting *Woodford*, 548 U.S. at 94).

[19] Code § 8.01-2(1) provides that "'*Action*' and '*suit*' may be used interchangeably and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts."

prior to the commencement of suit."). Switching between these terms shows two things. First, by referring to the commencement of an action or suit, the General Assembly demonstrated that it can, if it chooses, specifically place the temporal focus on the proceedings in court. It did not use similar language when drafting the exclusion in Code § 8.01-195.3(7). We assume that the "General Assembly chose, with care, the words it used in enacting the statute . . . ." *PKO Ventures, LLC v. Norfolk Redevelopment & Hous. Auth.*, 286 Va. 174, 183 (2013) (quoting *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 19 n.2 (2013)). Second, by switching between "claim" and the commencement of the action or suit, it demonstrates that they mean different things.

The majority contends that my interpretation of "claim by an inmate," and my focus on the notice of claim, is unworkable given what it views as the three distinct stages the VTCA requires for a suit to fall within the Commonwealth's waiver of sovereign immunity.[20] To the contrary, I believe that my interpretation gives proper effect to *all* provisions in the VTCA while the majority position undercuts the entire purpose of the notice of claim, which is to notify the Commonwealth of the claim so that it may investigate and evaluate the claim with an eye towards settling or denying the claim. *See Bates*, 267 Va. at 394; Code § 8.01-195.5. At best, the majority position treats the notice of claim and the provisions relating to the Attorney General and the Director of the Division of Risk Management as mere procedural hurdles necessary to file a complaint. At worst, it reads these provisions entirely out of the VTCA; if no

---

[20] The majority also contends that my interpretation "runs into trouble" with the full text of Code § 8.01-195.3(7), which excludes any "claim by an inmate . . . unless the claimant verifies under oath, by affidavit, that he has exhausted his remedies . . . ." The majority suggests that my interpretation of "claim by an inmate" seems to require the claimant to file the affidavit at the time the notice of claim is filed, while the VTCA requires the affidavit to be filed with the complaint. But nothing in the statute states when the affidavit must be filed or that it must be filed simultaneously with the making of the claim. Further, that same provision also provides that "[t]he time for filing the notice of tort claim shall be tolled during the pendency of the grievance procedure." Code § 8.01-195.3(7). This seems to recognize that the claim is made when the notice of claim is filed, as the claimant must exhaust these remedies prior to making a claim.

claim has been made, then there is nothing for the Attorney General and the Director of the Division of Risk Management to settle or deny, rendering those provisions meaningless form without substance. *See Spratley v. Commonwealth*, 298 Va. 187, 195 (2019) ("discourag[ing] any interpretation of a statute that would render any part of it useless, redundant or absurd" and instead "seek[ing] to read statutory language so as to give effect to every word" (quoting *Owens v. DRS Auto. FantomWorks, Inc.*, 288 Va. 489, 497 (2014))).

A claim cannot be described, investigated, and settled or denied unless that claim has already been made. The VTCA provides that all of this happens prior to a complaint ever being filed. Stepping back and taking a broad view of the statutory process set out in the VTCA, the provisions suggest the following: a cause of action accrues; a claim is made via a notice of claim; the Commonwealth evaluates the claim and either settles, denies, or ignores the claim; and then, if the Commonwealth denies or ignores the claim, or otherwise fails to make a settlement offer acceptable to the claimant, the claimant can proceed to the litigation stage and pursue its claim through litigation. The VTCA is not a model of clarity. But this interpretation gives effect to both the provisions that refer to a claim made prior to the commencement of litigation and those that refer to a claim pursued through litigation. It is also the interpretation that is most consistent with the requirement that we strictly construe the VTCA and any waiver of sovereign immunity. *See Doud v. Commonwealth*, 282 Va. 317, 320 (2011) ("In the VTCA, the Commonwealth has waived its sovereign immunity for tort claims in the circumstances to which the statute applies, but the waiver is a limited one and the VTCA, being an enactment in derogation of the common law, is strictly construed."). Therefore, I would find that the "claim by an inmate" is made at the time the written notice of claim is filed with the Commonwealth, and the claimant's status should be determined at that point in time. Accordingly, I would find that the circuit court did not err in sustaining the Commonwealth's plea in bar, and thus, I respectfully dissent.